236 F.2d 776
 LOCAL 19, WAREHOUSE, PROCESSING AND DISTRIBUTIVE WORKERS
UNION, RETAIL, WHOLESALE AND DEPARTMENT STORE
UNION, Affiliated with Congress for
Industrial Organizations, Appellant,
v.
The BUCKEYE COTTON OIL COMPANY, Appellee.
 No. 12652.
 United States Court of Appeals Sixth Circuit.
 Decided Aug. 22, 1956.
 
 Anthony J. Sabella, Memphis, Tenn. (W. Thomas Williams, Memphis, Tenn., on the brief), for appellant.
 James O. Coates, Cincinnati, Ohio (Harry W. Laughlin, Jr., Memphis, Tenn., on the brief), for appellee.
 Before SIMONS, Chief Judge, ALLEN and MILLER, Circuit Judges.
 ALLEN, Circuit Judge.
 
 
 1
 This appeal arises upon a motion for summary judgment entered in favor of defendant in the trial court.[1] The complaint filed under Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185, 29 U.S.C.A. § 185, alleged the existence of a collective bargaining agreement between the parties, providing terms in respect to hours of work, wages and working conditions, and also providing in Article VIII for mutual and voluntary arbitration of grievances. The pertinent part of Article VIII reads as follows:
 
 
 2
 'A grievance is defined to be any difference between the Employer and any employee, or employees, covered by this agreement as to any matter involving the interpretation or application of this agreement, or as to any matter directly affecting the employee in respect to hours of work, wages, or working conditions. Should any grievance arise it shall be settled in the following manner:
 
 
 3
 'First: Between the employee and his shop steward and the foreman or supervisor of the particular department; if not settled, then,
 
 
 4
 'Second: Between the Plant Grievance Committee and the Mill Superintendent or other representative designated by the management. * * * If not settled, then,
 
 
 5
 'Third: The matter shall be taken up between the Grievance Committee, a representative of the Union and a representative of the Management. * * *
 
 
 6
 'Fourth: If no mutual agreement has been reached on a matter involving the interpretation or application of any provision of this Agreement, the matter shall, if other party so requests, be taken up by a Board of Arbitration composed of a representative of the Employer, a representative of the Union, and a third party selected by, and mutually agreeable to, the Union and the Employer. If the Union and the Employer cannot agree on the selection of the third party, they shall request the American Arbitration Association to submit a list, or lists, of arbitrators from which a mutually agreeable third party shall be selected by the parties. It is understood that only grievances involving the interpretation and application of this Agreement may be brought to arbitration except that it is agreed that the question of general wage increases or decreases shall not be subject to any part of the grievance procedure, including arbitration.
 
 
 7
 'In considering a grievance as provided for above, the Board of Arbitration shall limit itself only to the grievance as stipulated in writing jointly by the Employer and the Union, and shall neither add to nor subtract from the stipulated grievance or the terms of this Agreement. A decision of the majority of the three arbitrators shall be final and binding on both parties.'
 
 
 8
 The complaint averred that defendant violated the collective bargaining agreement as to working time by employing members of the plaintiff union in excess of 40 hours in any one week and for seven consecutive days without paying the compensation agreed upon, that defendant had refused to pay under the contract, that plaintiff demanded that the grievance be submitted to arbitration, but that defendant had refused to arbitrate. It was alleged that this refusal would cause substantial and irreparable damage and that there was no adequate remedy at law. The complaint prayed for judgment enjoining defendant, its officers and agents, from violating the agreement as to payment for overtime work, for money judgment for wages found due, and 'That the Court order the Defendant to submit this dispute to arbitration in accordance with the terms of the collective bargaining Agreements, and that it cooperate with the Plaintiff in the choice of a third arbitrator.'
 
 
 9
 Defendant filed a motion to dismiss the complaint. Subsequently a motion for summary judgment was filed by plaintiff. The court sustained the motion to dismiss the complaint upon the ground that the court lacks jurisdiction of the subject matter and on the further ground that the complaint fails to state a claim upon which relief can be granted.
 
 
 10
 In its oral opinion the court stated in effect that the decision of the Supreme Court of the United States in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510, required the dismissal of the complaint. That case held that Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, 29 U.S.C.A. § 185, withholds from the federal district court jurisdiction over suits by a labor union for employees' unpaid wages. The District Court in its oral opinion herein stated that 'the Westinghouse case settles a number of the questions in this case to considerable extent, if not this whole lawsuit.' The court declared that since the Westinghouse case denied enforcement of wage demands in an action based on Section 301, enforcement of a contract to arbitrate with regard to alleged unpaid overtime wages based on Section 301 must also be denied. The District Court also indicated that state law governs, and declared that under Tennessee law executory contracts to arbitrate are not enforceable. Cf. Cole Manufacturing Co. v. Collier, 91 Tenn. 525, 19 S.W. 672; Key v. Norrod, 124 Tenn. 146, 136 S.W. 991. Finally, the court held that this is a labor dispute in which injunctive relief is prohibited by the Norris-LaGuardia Act, 29 U.S.C. § 101 et seq., 29 U.S.C.A. § 101 et seq.
 
 
 11
 At the hearing on the motions counsel for plaintiff stated that the only maintainable portion of the complaint is 'the action seeking a mandatory injunction to compel defendant to arbitrate.' This was the question considered and decided by the District Court and also is the question presented here.
 
 
 12
 We think the problems involved are not so easily solved as indicated below.
 
 
 13
 As to the application of the Westinghouse case, while the complaint herein originally involved payment of wages, the arbitration is sought under a collective bargaining contract in which provisions establishing the arbitration method of negotiation and settlement constitute an important feature, and are made applicable to many issues other than those of wages or hours. A grievance as defined above thus covers problems not involved in the Westinghouse decision. There the controversy related only to the payment of back wages. The enforcement of an arbitration agreement was not sought and the question of arbitration was not raised. The right set up was individual to the employee. This distinction was pointed out by the First Circuit in Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Company, 1 Cir., 233 F.2d 85, 100. The court there stated:
 
 
 14
 '* * * the effect of the Westinghouse holding, reflected in all the opinions of the majority justices, was to eliminate from § 301 jurisdiction a complaint by a union that involves no more than a cause of action which is 'peculiar in the individual benefit' or 'the uniquely personal right of an employee' or which 'arises from the individual contract between the employer and employee.' 348 U.S. at pages 460, 461, 464, 75 S.Ct. at pages 500, 501, 503. That holding was not aimed at any cause of action or remedy that appropriately pertains to the union as an entity, particularly one which an individual employee may have no equal power to enforce. The promise of the employer to arbitrate, which frequently is linked in the contract or in negotiations with a union no-strike pledge, seems to us to be at the forefront of the contract terms for whose breach only the union can effectively seek redress * * *.'
 
 
 15
 The complaint here seeks relief broader than and distinct from money judgment. This is an action to compel the use of a negotiating device voluntarily agreed upon between management and labor and extensively used. In an exhaustive article, 'The Enforcement of Grievance Arbitration Provisions,' by William P. Murphy, 23 Tenn.Law Review 959, it is estimated that similar arbitration provisions exist in some 90% of the labor bargaining contracts. The enforcement of this agreement means that, if in the future a controversy arises over conditions of work or the application or interpretation of the agreement, either party may secure a settlement by arbitration rather than by work stoppage or lockout.
 
 
 16
 Defendant urges that the prayer for enforcement of the arbitration provisions is in effect identical with a prayer for money judgment. This contention cannot be sustained. It is in fact conceivable that if the arbitration is instituted in accordance with the bargaining agreement a majority of the members of the Board of Arbitration might vote in favor of defendant's contentions and deny those of the union. What plaintiff seeks here, although it hopes that it will secure an award in its favor, is that this bargaining feature be used. The court in its order dismissing the complaint finds that plaintiff relies upon this one prayer of the complaint.
 
 
 17
 Defendant also contends that the bargaining contract provides for voluntary agreement and that if arbitration is ordered by this court it will not be voluntary. The bargaining agreement was entered into voluntarily and, like any other contract, the contract for arbitration falls within the purview of Section 301 and is enforceable thereunder.
 
 
 18
 We conclude that the Westinghouse case is not controlling.
 
 
 19
 Assuming, but not deciding, that if Tennessee law applies, the arbitration contract being executory is not enforceable, cf. 'The Enforcement of Grievance Arbitration Provisions' by William P. Murphy, supra, since the instant case arises under Section 301, 29 U.S.C. § 185, 29 U.S.C.A. § 185, and also is governed by the Arbitration Act, 9 U.S.C. § 1 et seq., and diversity of citizenship does not exist, we think the state law does not necessarily apply. The decisions in Bernhardt v. Polygraphic Co. of America, Inc., 350 U.S. 198, 76 S.Ct. 273, strongly relied on by defendant, and Guaranty Trust Co. of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, upon which the Bernhardt case is based, are each squarely grounded upon the fact that a diversity case is presented. Under Section 301, on the contrary, and under 9 U.S.C. § 1 et seq., jurisdiction is derived from Article III of the United States Constitution, which gives the courts of the United States jurisdiction in cases 'in Law and Equity, arising under * * * the Laws of the United States * * *.' Cf. Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co., supra, 233 F.2d at page 95.
 
 
 20
 The Supreme Court has pointed out in two recent cases that Guaranty Trust Co. of New York v. York, supra, requires the application of state law only when the controversy in question is concerned 'solely with State-created rights.' The court said in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 583, 90 L.Ed. 743, 'For purposes of diversity suits a federal court is, in effect, 'only another court of the State.' Guaranty Trust Co. (of New York) v. York, supra, 326 U.S. at page 108, 65 S.Ct. at page 1469. The considerations that urge adjudication by the same law in all courts within a State when enforcing a right created by that State are hardly relevant for determining the rules which bar enforcement of an equitable right created not by a State legislature but by Congress.' To the same effect see the holding of the Supreme Court in Levinson v. Deupree, 345 U.S. 648, 73 S.Ct. 914, 97 L.Ed. 1319. The Supreme Court pointed out, 345 U.S. at page 651, 73 S.Ct. at page 916, that the jurisdiction of the United States District Court in that case 'did not derive from diversity of citizenship; indeed there was no such diversity. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, is irrelevant. The court in this case was not 'in effect, only another court of the State,' Guaranty Trust Co. of New York v. York, 326 U.S. 99, 108, 65 S.Ct. 1464, 1469, 89 L.Ed. 2079.'
 
 
 21
 In Bernhardt v. Polygraphic Co., Inc., supra (350 U.S. 198, 76 S.Ct. 276), a suit instituted in the state court of Vermont was removed to the federal district court on ground of diversity of citizenship. The action was based upon an employment contract and sought damage for petitioner's discharge. The Polygraphic Company had hired petitioner, who resided in New York at the time, under a contract including a provision that the parties would submit any dispute to arbitration under New York law. Later petitioner, being a resident of Vermont, brought an action for damages in the state court. After removal to the federal court respondent moved for a stay in order that the controversy might be arbitrated in New York. The District Court, however, ruled that the arbitration provision of the contract was governed by Vermont law. The Supreme Court held that, since the right to arbitration owed its existence to one of the states and not to the United States, the local law governed. Mr. Justice Douglas, speaking for the court, called attention to the declaration of Guaranty Trust Co. of New York v. York, supra, that the federal court enforcing a state-created right in a diversity case is "only another court of the State." The court held that the remedy by arbitration substantially affects the cause of action created by the state and that, since this was a state-created right, the federal court could not allow arbitration where the state court would disallow it. The Polygraphic case is not controlling.
 
 
 22
 Defendant however, urges that the Supreme Court in the Westinghouse case, supra, held in effect that the state law governs and argues that the rights relied on here were created by state law. Each contention, we think, is untenable.
 
 
 23
 While the Supreme Court in the Westinghouse case construed Section 301, it construed it solely with reference to a suit for payment of wages. It did not declare the meaning of the term 'suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * *.' § 301. In absence of such a construction by the Supreme Court we adhere to the decision by this court in Milk & Ice Cream Drivers and Dairy Employees Union Local No. 98 v. Gillespie Milk Products Corporation, 6 Cir., 203 F.2d 650. We there held, quoting Section 301, that the unqualified use of the word 'suits' in the Labor Management Relations Act authorized an injunction for the full enforcement of the substantive rights therein created. We applied this section to an arbitration controversy and held that an injunction should issue to prohibit the employer from refusing to give effect to the decision and award of a duly constituted arbitrator. We pointed out that the same contention with reference to Section 301 had already been decided against the appellee in American Federation of Labor v. Western Union Telegraph Co., 6 Cir., 179 F.2d 535, and held that the complaint stated a specific cause of action within the jurisdiction of the District Court. In accord are Textile Workers Union of America v. Aleo Manufacturing Co., D.C., 94 F.Supp. 626; Mountain States Division No. 17, etc. v. Mountain States Telephone & Telegraph Co., D.C., 81 F.Supp. 397; Commercial Telegraphers' Union, A.F.L., v. Western Union Telegraph Co., Inc., D.C., 53 F.Supp. 90.
 
 
 24
 Also this case falls within the purview of the United States Arbitration Act, 9 U.S.C. § 1 et seq. In seeking to secure the arbitration agreed upon plaintiff here has rights and remedies created by the Federal Act and not by any state. Hence state law does not control.
 
 
 25
 This court has already declared that the United States Arbitration Act applies to a collective bargaining contract. Hoover Motor Express Co., Inc., v. Teamsters, Chauffers, Helpers and Taxicab Drivers, Local Union No. 327, 6 Cir., 217 F.2d 49. It was there held that 9 U.S.C. § 1, does not exclude the collective bargaining contract from the operation of the Act, which creates federal rights in arbitration and supplies the procedural remedy.
 
 
 26
 Defendant's answer to the Hoover decision is its renewed contention that under 9 U.S.C. § 1, the bargaining contract here involved is a 'contract of employment' and therefore excepted from the operation of the Act.
 
 
 27
 We adhere to our holding in the Hoover Motor Express Co., Inc., v. Teamsters' Local Union No. 327, supra, that the bargaining contract is not excluded. The former decision of this court in Gatliff Coal Co. v. Cox, 6 Cir., 142 F.2d 876, does not require a reversal of the Hoover case. Upon reconsideration of this question we again decide that the Gatliff Coal Co. case has no bearing upon the question whether the collective bargaining contract herein is 'a contract of employment.' The Gatliff case involved an individual contract for wages and clearly falls within the exception of 9 U.S.C. § 1. It did not cover collective bargaining contracts. The Gatliff case, rightly decided on its facts, supports the doctrine that an individual hiring for wages is a contract of employment excluded by Section 1 of the Arbitration Act. The agreement to establish an arbitration system included in the instant collective bargaining contract does not fall within the exception. Hoover Motor Express Co., Inc., v. Teamsters' Local Union No. 327, supra; J. I. Case Co. v. National Labor Relations Board, 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762; Lewittes & Sons v. United Furniture Workers of America, D.C., 95 F.Supp. 851, 855; United Office & Professional Workers of America v. Monumental Life Insurance Co., D.C., 88 F.Supp. 602, 606; Local 505, United Electrical, Radio and Machine Workers of America v. General Electric Co., supra, 233 F.2d at pages 97-100.
 
 
 28
 The Norris-LaGuardia Act prohibits the use of temporary or permanent injunctions in any case involving or growing out of a 'labor dispute,' which is defined as follows:
 
 
 29
 'The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee.' (29 U.S.C. § 113(c), 29 U.S.C.A. § 113(c).)
 
 
 30
 It is claimed that this broad provision covers the agreement for arbitration involved and hence prohibits the use of injunction herein.
 
 
 31
 The Norris-LaGuardia Act does not include arbitration as one of the transactions between employer and labor in which an injunction is prohibited. No act connected with or growing out of a system of labor arbitration is listed in 29 U.S.C. § 104, 29 U.S.C.A. § 104, with its enumeration of specific acts not subject to restraining orders or injunctions. In fact the statute, 29 U.S.C. § 108, 29 U.S.C.A. § 108, includes a provision clearly evidencing approval of the use of arbitration:
 
 
 32
 'No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.'
 
 
 33
 Moreover, the Norris-LaGuardia Act does not eliminate all injunctive relief with reference to labor disputes. Virginian Railway Co. v. System Federation, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Graham v. Brotherhood of Locomotive Firemen & Enginemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22, in which the Norris-LaGuardia Act was specifically ruled not to apply; Syres v. Oil Workers International Union, 350 U.S. 892, 76 S.Ct. 152.
 
 
 34
 In view of the above decisions we consider that we are free to follow the specific holding of this court in an arbitration case, Milk and Ice Cream Drivers and Dairy Employees Union, Local 98 v. Gillespie Milk Products Corporation, supra. It was there urged that the Norris-LaGuardia Act prohibited a United States district court from enjoining violation of a labor contract. But the court held that the use of the injunctive process was authorized for full enforcement of the rights created by Section 301, and also considered that in the previous decision of this court, American Federation of Labor v. Western Union Telegraph Co., supra, by necessary implication the holding included a decision that the Norris-LaGuardia Act did not forbid the granting of injunctive relief.
 
 
 35
 An excellent review of the pertinent adjudications is found in United Electrical Workers v. General Electric Co., supra. The First Circuit, speaking through Chief Judge Magruder, points out that Section 107 of the Norris-LaGuardia Act was designed to eliminate the usual 'labor injunction,' that is, an order which prohibits or restricts 'unilateral coercive conduct of either party to a labor dispute.' This conclusion is strongly supported by the text of 29 U.S.C. § 107, 29 U.S.C.A. § 107, which provides that under certain conditions defined therein, after hearing in open court a federal court may issue a temporary or permanent injunction. The court is required to make findings of fact to the effect that unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained, that substantial and irreparable injury to complainant's property will follow, that public officers charged with the duty of protecting complainant's property are unable or unwilling to furnish adequate protection, and other findings which emphasize the fact that transactions resulting from threatened or actual violence and injury are those covered by this section. As pointed out by the First Circuit, an order to compel arbitration of the breach of a prior agreement to submit disputes to arbitration appears to be of an entirely different character. Recognizing the confusion in the cases as to the applicability of the Norris-LaGuardia Act, the First Circuit held that the statute does not prohibit the granting of the relief sought, and determined that in a case arising under Section 301 the remedies to be applied are those established in the United States Arbitration Act, 9 U.S.C. §§ 2, 3 and 4. Simultaneously with the announcement of Local 205, United Electrical Workers of America v. General Electric Co., supra, the First Circuit announced a decision in Newspaper Guild of Boston v. Boston Herald-Traveler Corporation, 1 Cir., 233 F.2d 102, holding that the federal district court has jurisdiction under Section 301 of the Labor Management Relations Act of a suit by a union to compel an employer to arbitrate a dispute in accordance with terms of a collective bargaining contract. On the same day in Goodall-Sanford, Inc., v. United Textile Workers of America, A.F.L., Local 1802, 1 Cir., 233 F.2d 104, the First Circuit affirmed a judgment of the District Court, 131 F.Supp. 767, granting a motion for summary judgment on the union's prayer for specific performance of an arbitration provision.
 
 
 36
 Moreover, in Independent Petroleum Workers of New Jersey v. Esso Standard Oil Co., 235 F.2d 401, the Third Circuit on June 26, 1956, held that a federal district court has jurisdiction under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, 29 U.S.C.A. § 185, to decree specific performance of a provision in a collective bargaining agreement between a union and an employer, which requires them, when a new job classification is established, to negotiate on the salary rate for such classification. The district court had dismissed Count 1 of the complaint on the ground that the refusal to negotiate constituted an unfair labor practice within the exclusive jurisdiction of the National Labor Relations Board.
 
 
 37
 Judge Kalodner, speaking for the court, pointed out that the Supreme Court of the United States had held in the Westinghouse case that a "breach of contract is not an 'unfair labor practice"' and also that the National Labor Relations Board in repeated rulings had decided that it had no jurisdiction over breach of contract. The Third Circuit held that the Norris-LaGuardia Act did not apply and concluded that in Section 301 Congress had provided that the federal courts should have jurisdiction with reference to such breaches of contract. The order of the district court was reversed.
 
 
 38
 There is conflict in the adjudication of both the district courts and circuit courts upon all points covered in this opinion. In view of the full treatment which these questions have received in the cases quoted herein we deem it unnecessary to discuss these adjudications exhaustively.[2] Generally in accord with our conclusion as to the applicability of the Norris-LaGuardia Act see Textile Workers Union v. Aleo Manufacturing Co., supra; Mountain States Division No. 17 v. Mountain States Telephone and Telegraph Co., supra; Commercial Telegraphers' Union, A.F.L. v. Western Union Telegraph Co., Inc., supra. (This case decided that injunctive relief could be granted in the labor controversy presented, but refused the preliminary injunction prayed for because of the public interest involved.) Wilson Bros. v. Textile Workers Union, D.C., 132 F.Supp. 163, appeal dismissed 2 Cir., 224 F.2d 176.
 
 
 39
 Defendant also contends that the complainant praying for specific enforcement of the arbitration clause in a collective bargaining agreement does not state a claim upon which relief can be granted.
 
 
 40
 However, the specific remedy sought in the instant case is expressly authorized in the United States Arbitration Act, 9 U.S.C. § 4, which reads as follows:
 
 
 41
 'A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.'
 
 
 42
 As stated in Bernhardt v. Polygraphic Co. of America, Inc., supra, 350 U.S. 201, 76 S.Ct. 275, the "agreement in writing" for arbitration referred to in 9 U.S.C. § 3 (the section providing for a stay of the trial until arbitration) is the kind of agreement defined in Sections 1 and 2. By analogy we conclude that a 'written agreement for arbitration' covered by Section 4 is also the agreement defined in Sections 1 and 2. Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co., supra, 233 F.2d 97. In the Bernhardt case the court points out that there is no showing that the contract there involved evidences "a transaction involving commerce." Here the complaint, the allegations of which for the purpose of ruling upon motion to dismiss are taken as true, sets up that defendant is engaged in an industry affecting commerce within the purview of the Labor Management Relations Act. This collective bargaining agreement between a local union, CIO, and the defendant therefore is part of a contract evidencing a transaction involving commerce within 301.
 
 
 43
 It follows that Section 4 makes available to this plaintiff the right of specific enforcement of the arbitration provision. Section 4 is applicable whether or not the steps required by the collective bargaining contract for the institution of the arbitration have already been taken. The statute specifically directs that the arbitration proceed in the manner provided for in the agreement for arbitration. This means under the facts of the instant case that defendant shall proceed to the selection of an arbitrator, to the statement of the grievance under Article VIII, and shall take other necessary steps in the arbitration in compliance with the bargaining contract.
 
 
 44
 The judgment of the District Court is reversed and the case is remanded for hearing in accordance with this opinion.
 
 
 
 [1]
 The parties will be denominated as in the court below
 
 
 [2]
 Contra to our conclusion upon the applicability of the Norris-LaGuardia Act see Alcoa S.S. Company, Inc., v. McMahon, 2 Cir., 173 F.2d 567; United Steelworkers of America v. Galland-Henning Manufacturing Co., D.C., 139 F.Supp. 630. Contra to our conclusion that the collective bargaining contract is not a contract of employment excluded by the United States Arbitration Act, Section 1, see International Union United Furniture Workers of America v. Colonial Hardwood Flooring Co., Inc., 4 Cir., 168 F.2d 33. Contra to our conclusion that specific performance of an arbitration contract may be ordered by a federal court, see Mercury Oil Refining Co. v. Oil Workers International Union, 10 Cir., 187 F.2d 980
 Certain decisions relied on by defendant fall into categories entirely different from the instant case and are not controlling here. For example, W. L. Mead, Inc., v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 1 Cir., 217 F.2d 6, arose out of an application for a temporary injunction forbidding a union from continuing a strike and peaceful picketing of the employer's premises. International Longshoremen's and Warehousemen's Union v. Libby, McNeill & Libby, 9 Cir., 221 F.2d 225, arose out of an action for declaratory judgment that an employee of the defendant had been wrongfully discharged. Recovery of the amount claimed to be due was prayed for. The Ninth Circuit held that the case fell squarely within the Westinghouse case, supra. Amazon Cotton Mill Co. v. Textile Workers Union of America, 4 Cir., 167 F.2d 183, held that the federal courts had no jurisdiction to issue an injunction to restrain an ordinary unfair labor practice. The Arbitration Act was not involved in these cases.