**AMERICAN POSTAL WORKERS UNION, AFL–CIO, Plaintiff-Appellant,**

v.

**UNITED STATES POSTAL SERVICE, Defendant-Appellee.**

**Nos. 86–5611, 86–5612.**

United States Court of Appeals, Eleventh Circuit.

Aug. 4, 1987.

Joseph H. Kaplan, Kaplan, Sicking & Bloom, P.A., Miami, Fla., Charlene Miller Carres, Tallahassee, Fla., for plaintiff-appellant.

Leon B. Kellner, U.S. Atty., Wendy A. Jacobus and Linda Collins Hert, Asst. U.S. Attys., Miami, Fla., Kevin Rachel, U.S. Postal Service, Office of Labor Law, Washington, D.C., for defendant-appellee.

Before GODBOLD and HILL, Circuit Judges, and ESCHBACH,* Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge:

This case requires us to undertake the sometimes hazardous task of choosing an appropriate limitations period to govern a federal statutory action that provides none. The plaintiff, American Postal Workers Union ("the Union"), brought suit in two cases to vacate arbitration awards rendered pursuant to a collective bargaining agreement with the United States Postal Service ("the Postal Service"). The district court dismissed the complaints, holding them both to be untimely, and in Appeal No. 86–5611, holding that the Local Union lacked standing to sue under the national collective bargaining agreement. For the reasons that follow, we disagree on both points and reverse.

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

I

The Postal Service and the National Union operate under a collective bargaining agreement, which has been in effect since 1984.[1] The National Union is made up of various local unions throughout the country. While the bulk of the agreement is national in scope, Article 30 of the agreement lists items for which local bargaining is permitted (so long as the local understandings reached are not inconsistent with the national agreement). In late 1985, the Miami Area Local requested bargaining under Article 30 over certain proposals regarding the Homestead and Opa-Locka, Florida Postal facilities. No agreement could be reached on many of the Union's proposals, and in each case, arbitration under the agreement was invoked. Under Article 30 and a memorandum of understanding, which amplified and, in respects not relevant here, amended that article, arbitration of matters that are appropriate for local bargaining is not permitted unless the National Union President authorizes it. The Postal Service did not contest whether the requisite authorization was sought and obtained, and in fact affirmatively asserts that "[t]he disputes were properly taken to arbitration by the National Union." Appellee's Brief in No. 86–5611 at 6; in No. 86–5612 at 5. However, each of the arbitration awards is, on its face, directed to the Local.

The arbitration award in Appeal No. 86–5611 was issued on September 30, 1985, and delivered to appellant the same day. Appellant filed an action in the district court seeking to vacate the award on December 30, 1985, but only served a local official of the Postal Service. Service on the Postmaster General, the Attorney General, and the U.S. Attorney was perfected within 120 days of the filing of the complaint.[2] Appellant amended its complaint to allege authorization by the National Union to bring this suit in response to the Postal Service's motion to dismiss, before the district court's ruling on that motion.

In No. 86–5612, the arbitration award was issued on October 3, 1985. Appellant asserts in its brief that the award was not delivered to it until October 7, 1985.[3] The complaint seeking to vacate the award was filed on January 6, 1986. Again, service at that time was only made on a local postal official. Service on the Postmaster General, the Attorney General, and the U.S. Attorney was perfected within 120 days of the filing of the complaint.[4] As in No. 86–5611, appellant's amended complaint, filed in response to the Postal Service's motion to dismiss, specifically alleges authority from the National Union to prosecute the suit.

No. 86–5612 was dismissed by the district court as untimely. No. 86–5611 was dismissed on the twin grounds of untimeliness and lack of standing. Appellee urges

1. The collective bargaining agreement itself is a product of what has come to be known as "interest arbitration," i.e., arbitration over what the substantive terms of a collective bargaining agreement should be, rather than whether they have been complied with. Interest arbitration has become a particularly popular method of reaching collective bargaining agreements where workers have no right to strike.

2. Our perusal of the record disclosed a summons directed to the United States Attorney for the Southern District of Florida dated March 28, 1986 and a return of service dated the same day. Additionally, there were documents which purported to be summonses to the Attorney General (dated April 2, 1986) and the Postmaster General (dated April 16, 1986). One hundred twenty days from the filing of the complaint would have been April 30, 1986. We note that the documents directed to the Attorney General and Postmaster General were not accompanied by a

return of service or other proof that they were in fact served. However, the Postal Service concedes on brief that service was effected in March or April.

3. The record includes a copy of the award apparently file-stamped as received by appellant on October 7, 1985. We therefore assume the truth of appellant's assertion, which appellee has not challenged.

4. The situation regarding service mirrors that in Appeal No. 86–5611, except that 120 days from the filing of the complaint (January 6, 1986) would have been May 6, 1986. We also note that, in both cases, the United States Attorney moved for dismissal long before he had been technically served. Also, he appears to have been served with appellant's motion for enlargement of time to respond to his motion to dismiss some time in March.

lack of standing as an alternative ground of affirmance in No. 86–5612.

## II

In its timeliness analysis, the district court concluded that the United States Arbitration Act, 9 U.S.C. § 1 *et seq.* (1982) ("the USAA" also sometimes referred to as the "Federal Arbitration Act" or "FAA"), applied and that the failure to serve the complaint on the Postal Service, United States Attorney, and Attorney General within the three-month period allowed by 9 U.S.C. § 12 barred the suit. The court noted alternatively that the complaint was not timely served under the most analogous Florida limitations period, which is 90 days. *See* Fla.Stat.Ann. § 682.13(2) (West Supp.1987). We must disagree with the district court's analysis for two reasons: (1) the USAA does not, by its terms, apply to labor arbitrations of this type;[5] and (2) while we find it appropriate to "borrow" the period set out in the USAA rather than the Florida Statute, that borrowing does not include the service provision of the USAA. Thus, the period was tolled when the action was "commenced" under Fed.R. Civ.P. 3, by the filing of the complaint, as long as service was properly effected under Fed.R.Civ.P. 4 within 120 days of that filing.

## A

We begin by noting that the statute under which this action was brought, the Postal Reorganization Act of 1970, Pub.L. No. 91–375, 84 Stat. 719, 1970 U.S.Code Cong. & Admin.News 842 (1970) (codified as amended at 39 U.S.C.), does not contain a limitations period. In fact, the specific section under which this action was brought, 39 U.S.C. § 1208(b), does not even explicitly authorize judicial review or enforcement of arbitration awards. The sec-

tion simply reads: "Suits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties without respect to the amount in controversy."

■ Those schooled in labor law will note a remarkable resemblance of the section to section 301(a) of the Taft-Hartley Act, 29 U.S.C. § 185(a) (1982). The resemblance is not coincidental; Congress intended section 1208(b) of the Postal Reorganization Act to have the same effect within its sphere as the Taft-Hartley Act does elsewhere in labor law. *See Abernathy v. United States Postal Service,* 740 F.2d 612, 614 (8th Cir.1984); *Leach v. United States Postal Service,* 698 F.2d 250, 254–55 (6th Cir.1983); *National Association of Letter Carriers v. United States Postal Service,* 590 F.2d 1171, 1174 (D.C.Cir.1978); *see also Bowen v. United States Postal Service,* 459 U.S. 212, 232 n. 2, 103 S.Ct. 588, 600 n. 2, 74 L.Ed.2d 402 (1983) (White, J., dissenting). Thus, the parties have cited decisions under the postal statute and the Taft-Hartley Act interchangeably, and we agree that decisions under Taft-Hartley are highly relevant to the outcome of this case. Accordingly, much of our task is to examine the interaction of the USAA and the Taft-Hartley Act, paying especial heed to the historical evolution of the national labor policy.

The argument of the postal service is simple and, superficially, appealing. The USAA applies, argues the Postal Service, because the collective bargaining agreement in these cases is a "contract evidencing a transaction involving commerce" within the meaning of section two of the Act,[6] but not a "contract[ ] of employment

---

5. *McGregor & Werner, Inc. v. Motion Picture Laboratory Technicians Local 780,* 806 F.2d 1003 (11th Cir.1986), cited by appellee as establishing this circuit's position on the issue, does not even discuss the choice, but assumes the USAA applies. Therefore, the question of the applicability of the USAA to labor arbitrations is an open one in this circuit.

6. 9 U.S.C. § 2 reads, in pertinent part:

A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

of ... any ... class of workers engaged in foreign or interstate commerce," and is thus not excluded from the operation of the Act by section one.[7] For this latter proposition, the Postal Service cites numerous cases it contends decline to apply the exclusion to collective bargaining agreements "because they are not 'contracts of employment' within the meaning of the statute, or by giving a very restrictive interpretation to the 'class of workers' to which section one applies." Appellee's Brief in No. 86–5611 at 17 n. 9; in No. 86–5612 at 13. The USAA plainly requires *service*, rather than mere filing, within 3 months of the arbitration award. See 9 U.S.C. § 12.[8] The service in these cases, continues the argument, was ineffective because it did not comply with the dictates of Fed.R.Civ.P. 4(d)(4), (5).[9] Therefore, the Postal Service concludes, the instant cases were untimely brought.

There are several difficulties with the Postal Service's argument. The first is that it ignores the historical context of the cases cited in support, many of which may no longer be good law. Secondly, the proposition that the Postal Service contends requires us to apply the USAA (by declining to apply the exception) is "double-barreled." That is, courts have declined to apply the exclusion either (a) because collective bargaining agreements are not "contracts of employment," or (b) because the particular class of workers involved was not "engaged in interstate or foreign commerce." The Postal Service has connected these propositions in a manner that is somewhat misleading, tending to overstate the support in the caselaw for the first proposition. Finally, the second proposition, while fairly supported by the caselaw, simply does not help the Postal Service.

## B

The USAA was passed in 1925. Prior to that time, for a variety of reasons (not the least of which was what today seems an irrational judicial hostility to arbitration in general), executory agreements to arbitrate contractual disputes had been held unenforceable. Congress, viewing arbitration as a useful alternative to protracted litigation, remedied this situation for the federal courts, at least where there was an independent basis for federal jurisdiction over the dispute. The USAA provided, in general terms, that agreements to arbitrate contained in contracts "evidencing a transaction involving commerce" would be enforceable. 9 U.S.C. § 2 (1982). However, judges were not alone in their suspicion of arbitration. Organized labor, which was already aggrieved by actions of the federal judiciary, did not want federal courts to have the power to order it to arbitrate disputes with management. Accordingly, at the behest of the Seamen's Union, Congress included in the USAA the following provision: "but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other

---

7. 9 U.S.C. § 1 reads, in pertinent part:
   ... but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.

8. 9 U.S.C. § 12 reads, in pertinent part:
   Notice of a motion to vacate, modify, or correct an award must be served upon the adverse party or his attorney within three months after the award is filed or delivered.

   .    .    .    .    .

9. Fed.R.Civ.P. 4(d) reads, in pertinent part:
   .... Service shall be made as follows:

   *    *    *    *    *    *

   (4) Upon the United States, by delivering a copy of the summons and of the complaint to the United States attorney for the district in which the action is brought or to an assistant United States attorney or clerical employee designated by the United States attorney in a writing filed with the clerk of the court and by sending a copy of the summons and of the complaint by registered or certified mail to the Attorney General of the United States at Washington, District of Columbia, and in any action attacking the validity of an order of an officer or agency of the United States not made a party, by also sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency.
   (5) Upon an officer or agency of the United States, by serving the United States and by sending a copy of the summons and of the complaint by registered or certified mail to such officer or agency....

class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.

To say that a number of significant developments in labor law occurred between 1925, when the USAA was passed, and 1947, when the Taft-Hartley Act was passed, would be an understatement. In 1932, Congress passed the Norris-LaGuardia Act, reaffirming its earlier directive that federal courts get out of the labor injunction business. Shortly thereafter, in 1936, it passed the National Labor Relations Act, affirmatively protecting the right of workers to organize and creating a whole new administrative scheme to enforce that right. Finally, in 1947, the Taft-Hartley Act was passed, curtailing in important ways some of the rights given workers by the earlier statutes.

During the period immediately following passage of the Taft-Hartley Act, the question of federal court authority to order arbitration under a collective bargaining agreement arose. Some courts held that they had such power under the USAA, notwithstanding the Norris-LaGuardia Act or the statutory exclusion in the USAA, which appears to say otherwise. *See Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co.*, 233 F.2d 85 (1st Cir.1956), *aff'd on other grounds*, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957); *Signal-Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers of America*, 235 F.2d 298 (2d Cir.1956), *cert. denied* 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957); *Tenney Engineering, Inc., v. United Electrical, Radio and Machine Workers*, 207 F.2d 450 (3d Cir.1952); *Hoover Motor Express Co. v. Teamsters Local Union 327*, 217 F.2d 49 (6th Cir.1954); *Local 19, Warehouse, Processing and Distributive Workers Union v. Buckeye Cotton Oil Co.*, 236 F.2d 776, 781 (6th Cir.1956), *cert. denied* 354 U.S. 910, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957). Other courts held that the statutory exclusion barred assertion of such power. *See Pennsylvania Greyhound Lines, Inc. v. Amalgamated Association of Street, Electric Railway & Motor Coach Employees, Division 1063*, 193 F.2d 327 (3d Cir.1952); *United Electri-*

*cal, Radio and Machine Workers of America v. Miller Metal Products, Inc.*, 215 F.2d 221 (4th Cir.1954); *Lincoln Mills v. Textile Workers Union*, 230 F.2d 81 (5th Cir.1956), *rev'd on other grounds*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *United Steelworkers of America v. Galland-Henning Manufacturing Co.*, 241 F.2d 323 (7th Cir.), *rev'd* on authority of *Lincoln Mills*, 354 U.S. 906, 77 S.Ct. 1293, 1 L.Ed.2d 1425 (1957).

The foregoing cases cannot be read in a vacuum, however. They were part of a raging debate in the legal profession following the passage of Taft-Hartley over whether parties to a collective bargaining agreement could be ordered to arbitrate *at all.* The USAA was one arguable ground for such an order; another was the Taft-Hartley Act itself. The ultimate issue was resolved definitively by the Supreme Court in the now legendary decision in *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957). Reversing the decision of the Fifth Circuit, cited above, which had held section 301 of the Taft-Hartley Act to be procedural only in operation, the Supreme Court definitively held that the section was also a source of federal substantive law to be fashioned by the courts. Notably, the Supreme Court left untouched the Fifth Circuit's conclusion that the USAA was not available. As Justice Frankfurter noted in what is now a famous dissent (the main point of which was that the section was plainly procedural in light of its text and legislative history, and that there are serious constitutional problems with such a statute):

.... Naturally enough, I find rejection, though not explicit, of the availability of the Federal Arbitration Act to enforce arbitration clauses in collective bargaining agreements in the silent treatment given that Act by the Court's opinion. If an Act that authorizes the federal courts to enforce arbitration provisions in contracts generally, but specifically denies authority to decree that remedy for "contracts of employment," were available, the Court would hardly spin

such power out of the empty darkness of § 301. I would make this rejection explicit, recognizing that when Congress passed the legislation to enable arbitration agreements to be enforced by the federal courts, it saw fit to exclude this remedy with respect to labor contracts.... Congress heeded the resistance of organized labor, uncompromisingly led in its hostility to this measure by Andrew Furuseth, President of the International Seamen's Union and most powerful voice expressing labor's fear of the use of this remedy against it.

353 U.S. at 466–68, 77 S.Ct. at 926–27 (Frankfurter, J., dissenting) (citations omitted).

Even more revealing is the Supreme Court's decision in *General Electric Co. v. Local 205, United Electrical, Radio and Machine Workers of America,* 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957). That case, decided on the same day as *Lincoln Mills,* affirmed a decision of the First Circuit cited above. The First Circuit had held that a collective bargaining agreement was not a "contract of employment" within the meaning of the USAA's statutory exclusion. 233 F.2d at 99. Although the court noted that the reading it gave the USAA was arguably inconsistent with the legislative history, notably the reason for the insertion of the exclusionary provision, it found the legislative history ambiguous and held that it "cannot be attributed much force as against a reading of the statutory language itself." *Id.* In affirming, the Supreme Court noted:

> .... We follow in part a different path than the Court of Appeals, though we reach the same result. As indicated in our opinion in [*Lincoln Mills*], *supra,* we think that § 301 furnishes a body of federal substantive law for enforcement of collective bargaining agreements in industries in commerce or affecting commerce and that the Norris-LaGuardia Act does not bar the issuance of an injunction to enforce the obligation to arbitrate grievance disputes.

353 U.S. at 548, 77 S.Ct. at 922.

Thus, the Supreme Court expressly avoided reliance on the very ground advanced by the Postal Service in this case, although not explicitly disagreeing with the position. Instead, the Court preferred "to spin such power out of the empty darkness of § 301." The First Circuit itself has noted that such treatment undermines the validity of its holding in *Local 205,* and expressly declined to follow its earlier decision in a recent case. *Derwin v. General Dynamics Corp.,* 719 F.2d 484, 488 & n. 3 (1st Cir.1983). Thus, the *Local 205* decision has been effectively overruled by the later First Circuit decision in *Derwin,* if not by the Supreme Court's decision in *Local 205* itself.

The only other cases we have been able to locate that have held that collective bargaining agreements are not "contracts of employment" within the meaning of the statutory exclusion are two early Sixth Circuit cases: *Hoover Motor Express Co. v. Teamsters Local Union 327,* 217 F.2d 49 (6th Cir.1954) and *Local 19, Warehouse, Processing and Distributive Workers Union v. Buckeye Cotton Oil Co.,* 236 F.2d 776 (6th Cir.1956) *cert. denied* 354 U.S. 910, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957). In a later case, the Circuit held the USAA applied without extended discussion and without any mention of the statutory exclusion, merely stating that "[o]ther circuits have recognized the applicability of the United States Arbitration Act in suits upon collective bargaining agreements." *Chattanooga Mailers Union Local 92 v. Chattanooga News-Free Press Co.,* 524 F.2d 1305, 1315 (6th Cir.1975) (citations omitted).

However, in an even more recent case, involving the statute of limitations applicable to a union's suit to vacate an arbitration award, the court rejected an employer's argument that the USAA limitation should apply, holding that under *United Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966) and *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the general rule was to borrow a state statute of limitations "in the absence of an expressly applicable federal limitations period." *Champion International Corp. v.*

*United Paperworkers International Union, Local 371*, 779 F.2d 328, 331 (6th Cir. 1985). Implicit in this reasoning, of course, is the proposition that the USAA is not "an expressly applicable federal limitations period."

Even prior to *Lincoln Mills*, a number of circuits had expressly rejected reasoning such as that advanced in *Local 205* and *Hoover Motor Express*. *See United Steelworkers of America v. Galland-Henning Manufacturing Co.*, 241 F.2d 323 (7th Cir.), *rev'd* on authority of *Lincoln Mills*, 354 U.S. 906, 77 S.Ct. 1293, 1 L.Ed.2d 1425 (1957); *Signal-Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers of America*, 235 F.2d 298 (2d Cir. 1956), *cert. denied*, 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957); *United Electrical, Radio and Machine Workers of America v. Miller Metal Products, Inc.*, 215 F.2d 221 (4th Cir.1954); *Lincoln Mills v. Textile Workers of America*, 230 F.2d 81 (5th Cir.1956), *rev'd on other grounds*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Pennsylvania Greyhound Lines, Inc. v. Amalgamated Association*, 193 F.2d 327 (3d Cir.1952); *Tenney Engineering, Inc. v. United Electrical, Radio and Machine Workers of America*, 207 F.2d 450 (3d Cir. 1952).

■ Thus, the position that collective bargaining agreements are not "contracts of employment" within the meaning of the exclusionary language of the USAA was a distinctly minority view even prior to *Lincoln Mills*, and it cannot be cited with any confidence as the current view of *any* of the federal courts of appeals. In fact, only two courts have *ever* held that collective bargaining agreements are not "contracts of employment" within the meaning of the USAA. One of those courts has explicitly rejected such a holding in a more recent case, and the other has ignored its earlier holdings in more recent cases. Because of this, and because the legislative history behind the provision suggests a contrary reading, we also decline to adopt that posi-

tion. Accordingly, we hold that collective bargaining agreements are "contracts of employment" within the meaning of the exclusion.

■ Numerous courts have limited the exclusion to "workers actually engaged in interstate commerce," including bus drivers and truck drivers. *E.g. Pietro Scalzitti Construction Co. v. International Union of Operating Engineers, Local No. 150*, 351 F.2d 576 (7th Cir.1965); *contra United Electrical, Radio and Machine Workers of America v. Miller Metal Products, Inc.*, 215 F.2d 221, 224 (4th Cir.1954) (declining to adopt a narrow construction because the inclusionary language in section two was intended to exercise the full extent of the commerce power and reading the exclusionary clause using similar language narrowly would be inconsistent). We need not choose sides in this debate, however, because such a reading would not assist the Postal Service. It seems to us that, if any workers are "actually engaged in interstate commerce," the instant postal workers are. They are responsible for dozens, if not hundreds, of items of mail moving in "interstate commerce" on a daily basis. Indeed, without them, "interstate commerce," as we know it today, would scarcely be possible. Thus we conclude, and the Postal Service does not seriously argue otherwise,[10] that the workers involved in this case are "engaged in interstate or foreign commerce" within the meaning of the statutory exclusion. Therefore, the USAA does not apply—at least not directly.

### III

However, merely deciding that the USAA does not apply does not end our inquiry. We must decide which limitations period *does* apply and the effect of that decision on the outcome of this case. We are faced with essentially three possibilities: (1) the 90–day Florida limitation gov-

---

**10.** The Postal Service does not argue that postal work is not "commerce" even though interstate in character. Nor could it, for such an argument would not only take the collective bargain-ing agreement out of the exclusionary language in section one, it would also remove the agreement from the inclusionary language of section two.

erning suits to vacate arbitration awards, (2) the six-month limitation found in section 10(b) of the National Labor Relations Act, as applied in *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), and (3) the three-month period of the USAA applied via "borrowing" rather than directly.[11]

Choosing a state statute to provide the limitation would follow a time-honored tradition that is steeped in decades of caselaw. *See DelCostello*, 462 U.S. at 172–75, 103 S.Ct. at 2296–97 (separate dissenting opinions of Stevens and O'Connor, JJ.) (citing cases). However, this practice would leave an important part of the national labor policy, i.e., the rapid resolution of disputes under collective bargaining agreements, subject to the vagaries of the laws of the several states.[12] For example, in *International Union of Electrical, Radio and Machine Workers v. Ingram Manufacturing Co.*, 715 F.2d 886 (5th Cir.1983), *cert. denied* 466 U.S. 928, 104 S.Ct. 1711, 80 L.Ed.2d 184 (1984) the Fifth Circuit's "borrowing" analysis, coupled with the fact that the Texas arbitration statute expressly excluded collective bargaining agreements,[13] led the court to hold that a suit to confirm an arbitration award was subject to a four-year "catchall" limitations period. Whatever the merits of a longer statute of limitations for suits to confirm, rather than to vacate, an arbitration award, *cf. Locals 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Telephone and Telegraph Co.*, 628 F.2d 644 (1st Cir.1980), the application of

such a lengthy period to suits to vacate arbitration awards would seriously undermine the finality of arbitration and the rapid resolution of disputes under collective bargaining agreements.[14] Thus, *Ingram Manufacturing*, at least as applied to suits to vacate, has been rightly criticized as "contrary to federal labor policy." *Occidental Chemical Corp. v. Local 820, International Chemical Workers Union*, 614 F.Supp. 323, 328 (W.D.Mich.1985).

Also important to our consideration is the fact that the subject matter of § 301 of the Taft-Hartley Act, and by reference, § 1208 of the Postal Reorganization Act, is " 'peculiarly one that calls for uniform law.' " *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701, 86 S.Ct. 1107, 1111, 16 L.Ed.2d 192 (1966) (quoting *Local 174, Teamsters, Chauffeurs, etc. v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S.Ct. 571, 576, 7 L.Ed.2d 593 (1962)). "The need for uniformity, then, is greatest where its absence would threaten the smooth functioning of those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settlement of disputes under it." *Id.* at 702, 86 S.Ct. at 1111. We believe that this is precisely such a case. The time after which an arbitration award become final and unchallengable is central, at least in cases of this type where there is no claim of breach of duty on the part of the collective bargaining representative, and it is in fact the representative who is seeking to overturn (or support) the award.

**11.** While other possibilities have been suggested, e.g., the Florida statute governing suits on contracts not in writing, the parties do not seriously contest that if we "borrow" a state statute, the 90–day period on suits to vacate arbitration awards is the most analogous. No one has argued the applicability of the six-year provision for suits against the United States, *see* 28 U.S.C. § 2401, and we do not consider it. However, we note that such a lengthy period may be inconsistent with federal labor policy. The importance of the "borrowing" rather than direct application of the USAA is discussed in the text, *infra* at p. 476.

**12.** Fortunately, most state limitations periods governing review of arbitration awards are the

same. *See United Parcel Service, Inc. v. Mitchell,* 451 U.S. 56, 63 n. 5, 101 S.Ct. 1559, 1564 n. 5, 67 L.Ed.2d 732 (1981) (collecting and comparing state limitations periods).

**13.** We express no opinion whether a state statute excluding collective bargaining agreements from its ambit may nonetheless be borrowed for purposes of federal labor law. *Cf. Local 1020, United Brotherhood of Carpenters and Joiners of America v. FMC Corp.,* 658 F.2d 1285 (9th Cir.1981) (borrowing state statute despite exclusion).

**14.** We, of course, need not decide what period, if any, to apply to suits to confirm arbitration awards.

We realize that the Supreme Court in *Hoosier Cardinal* also noted that "[f]or the most part, statutes of limitations come into play only when these processes have already broken down." But we do not believe that observation is applicable here. In *Hoosier Cardinal*, the Supreme Court was dealing with a "straight" § 301 suit, that is, the Union was suing directly, without any intervening arbitration, for a violation of the collective bargaining agreement. In such a case, the Court was quite right that the voluntary formation of collective agreements and adjustment of disputes under them had broken down. The presence of an arbitration award, however, puts this case on a different footing from the standpoint of federal labor policy. Arbitration *is* one of the voluntary processes for adjustment of disputes under collective bargaining agreements. In a suit to vacate an award, one party is asking a court to *undo* the result reached through that voluntary process. We do not mean to suggest that a court will never take such a step—in certain circumstances it certainly will. However, those circumstances are carefully controlled by *federal* labor law. *See, e.g., United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596–97, 80 S.Ct. 1358, 1360–61, 4 L.Ed.2d 1424 (1960) (setting forth narrow standard of review for arbitration awards under collective bargaining agreements). We believe that the time period during which an arbitration award is vulnerable to attack is an equally crucial matter of federal labor policy and calls for the application of a uniform federal rule.

■ Our conclusion is buttressed by the Supreme Court's treatment of *Hoosier Cardinal* in the *DelCostello* case. Particularly with regard to the need for uniformity, the Court, after noting the distinction we have just mentioned, explained that uniformity was of less importance when the case does not involve "those consensual processes that federal labor law is chiefly designed to promote—the formation of the collective agreement and the private settle-ment of disputes under it." 462 U.S. at 162–63, 103 S.Ct. at 2289. The Court also said it had reserved the question whether to apply state law to other types of actions where "the relevant policy factors [are] different." *Id.* Finally the Court noted that Justice Stewart, the author of the *Hoosier Cardinal* opinion, had concurred separately in *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), advocating the uniform application of section 10(b) of the NLRA. Referring to that concurrence, the Court held, "[a]s we shall explain, we agree." *Id.*

■ We realize circuit court decisions since *DelCostello* have not embraced the notion of a uniform federal limitations period for non-hybrid actions such as this one. *See Champion International*, 779 F.2d at 331; *Derwin*, 719 F.2d at 487; *Ingram Manufacturing*, 715 F.2d at 888–89; *but cf. Abernathy v. United States Postal Service*, 740 F.2d 612, 616 n. 4 (8th Cir.1984) ("[T]he interests of federal labor law would suggest that a uniform statute of limitations be applied.") (*dictum*) However, we believe that those cases fail to take account of the full impact of *DelCostello*, which was relatively recent when some of them were decided. In any event, we believe that federal labor policy, as expressed in *DelCostello* and Justice Stewart's *Mitchell* concurrence, on which *DelCostello* relied, requires a uniform federal limitation for suits to vacate arbitration awards under collective bargaining agreements, regardless of whether they are "hybrid" claims.[15]

## IV

■ While we believe *DelCostello* counsels that there be a uniform federal limitations period for this type of suit, we do not believe that it is determinative of which limitations period to choose. In particular, the six-month period found in § 10(b) of the NLRA, which applies to *DelCostello* "hybrid" actions is unnecessary in a straight-

---

**15.** Nor can there be any contention, in light of *DelCostello,* that *Mitchell* retains any vitality. A close review of the cases discloses that both involved "hybrid" claims. Thus, *Mitchell* was not, as appellant states, "modified" by *DelCostello.* It was overruled.

forward union (or employer) challenge to an arbitration award. Neither the problems an employee has in evaluating a "hybrid" claim, nor the lack of a ready analogy, the reasons given by the *DelCostello* Court for adopting the comparatively lengthy six-month period, 462 U.S. at 165–67, 103 S.Ct. at 2291–92, are present in a case like this.

■ There is a ready analogy, a suit to vacate an arbitration award. Moreover, there is an analogous *federal* statute—the USAA. Additionally, adoption of the limitation period in that statute serves the federal interest of "relatively rapid disposition of labor disputes." *Hoosier Cardinal*, 383 U.S. at 707, 86 S.Ct. at 1114; *see also Mitchell*, 451 U.S. at 63, 101 S.Ct. at 1564; *DelCostello*, 462 U.S. at 168, 103 S.Ct. at 2292. The extra time an employee needs to evaluate his claim against a union in a hybrid suit being unnecessary to a straight action to vacate, it is appropriate that the latter have a correspondingly shorter limitations period. Thus, we believe that the USAA three-month period should be borrowed for suits of this type.

We recognize that this choice presents two questions: (1) whether it is appropriate to "borrow" a statute that Congress affirmatively intended not to be applicable directly, and (2) whether the result under a "borrowing" analysis is different than the result would be applying the statute directly. The answer to both of these questions is yes.

While we realize that there are theoretical problems with "borrowing" a statute Congress did not intend to apply directly, viewed in historical context those problems are more theoretical than real. At the time the USAA, including the exclusionary language, was enacted in 1925, the obvious intent of the Act was that arbitration under collective bargaining agreements could not be ordered *at all* (this is our reading of the exclusion, in any event, with the benefit of hindsight and over 60 years of labor law history). Since then,

however, the Taft-Hartley Act has been passed and authoritatively construed to permit judicial enforcement of arbitration clauses in collective bargaining agreements. Thus, applying the limitations period of the USAA hardly seems to do the same violence to the Congressional intent as wholesale application of the USAA to labor contracts would have done prior to 1947. In our view, such an application actually furthers the Congressional intent by providing for the "relatively rapid disposition of labor disputes." Accordingly, we see no barrier to applying the USAA by analogy, although we cannot apply it directly.[16] *See Derwin*, 719 F.2d at 488 n. 4 ("The federal arbitration act can be consulted in the formulation of federal substantive law in section 301 suits...."); *but cf. id.* at n. 3 ("Other federal Circuits have unanimously declined to borrow the limitations period set forth in the federal act but have looked instead to state law.") (citing cases).

However, it does make a difference that we apply the USAA by way of "borrowing" rather than directly, and that difference is outcome-determinative in this case. Within two weeks after the oral argument in these cases, the Supreme Court decided *West v. Conrail*, —— U.S. ——, 107 S.Ct. 1538, 95 L.Ed.2d 32 (1987). In that case, a unanimous Supreme Court held that when the six-month period of § 10(b) of the NLRA is borrowed for a *DelCostello* type action, the borrowing does not include the provision in that subsection requiring that "service of a copy thereof upon the person against whom such charge is made" also be effected within the six-month period. Accordingly, the Court held that the action was timely when "commenced" within the meaning of Fed.R.Civ.P. 3, i.e., the complaint was filed, within the limitations period, so long as proper service was effected within 120 days as provided in Fed.R.Civ.P. 4(j).

■ This holding dictates the same analysis in this case. Specifically, the requirement of the USAA that notice of a

---

**16.** Although Congress could have achieved the result it desired (the enforceability of agreements to arbitrate in labor contracts) by striking

the labor exemption from the FAA, it did not do so. Thus, we may apply the USAA only by analogy.

motion to vacate be "served" within three months is not part of the borrowing. Whatever our doubts about adding an additional four months onto a three-month (or even six-month) limitations period specifically chosen for its brevity, that decision is no longer ours to make. Therefore, if the plaintiff filed its complaint to "commence" the action within three months (which it did),[17] and effected proper service within 120 days of filing (which it did),[18] then the actions are timely.

Appellant did not make this argument below, nor in its briefs to this court, although counsel for appellant at oral argument embraced the suggestion that Rule 4 allowed an additional 120 days in which to effect service. Nonetheless, in light of the recent decision in *West*, we believe that it would be inequitable, and, more importantly, bad jurisprudential policy, to hold that appellant has waived the argument. Counsel cannot be expected to predict every change or development in the law, and we have, as a general matter, an obligation to apply the law in effect at the time of our decision. Absent reasons to decline to apply *West* retroactively, and we can think of none, we believe that we must hold the complaints in this case timely.

## V

■ We finally turn to the question whether the appellant Union had standing to bring the instant action.[19] In deciding this question we make two important preliminary observations. First, the "standing" argument that the Postal Service makes has little, if anything, to do with the doctrine of "Standing" as it has developed under Article III of the Constitution. It seems clear to us that the local Union which, if not technically a party to the arbitration, represented the Union's interests there and stands to gain or lose the

most from this court's decision, has a sufficient "stake in the outcome" to have standing under Article III. Rather, what the Postal Service contends is that the local is not contractually authorized (in its dealings with the parent and the Postal Service) to bring suit. This is quite a different matter, arguably more akin to "capacity" to sue rather than "standing". Secondly, we note that these cases were decided at the pleading stage, where the standard for dismissal most strongly favors the plaintiff, whose suit can be dismissed only if he "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–56, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). With those two points in mind, we think it clear that plaintiff has sufficiently pled its "standing" to withstand a motion to dismiss.

In the first place, it is not at all clear to us that, as the Postal Service contends, the National was the entity that was a party to the arbitration awards. Both of the awards themselves appear directed to the locals. Additionally, the same union representatives prosecuted the arbitration that conducted this lawsuit in the district court. As we have noted, the Postal Service, for whatever reason, did not object to the arbitrations as not having been authorized by the National Union. Additionally, the restriction in the collective bargaining agreement, to which the Postal Service repeatedly adverts, restricts only the right of the locals to take claims to arbitration, *not* the right to contest the arbitration (or seek enforcement) in court. It seems to us that appellee cannot simultaneously claim the benefits of an arbitration award while asserting that the other party to the arbitration lacks standing to challenge it. If appellee wanted to raise the issue of lack of

17. Because this case is at the pleading stage, as we noted above, we have assumed that appellant's assertion that it did not receive a copy of the Award until five days after it was rendered is true. This issue may remain open, however, in subsequent proceedings on remand.

18. The district court's opinion states that service in No. 86–5611 was not effected until nearly six

months after the complaint was filed. This was inaccurate. The complaint was filed on December 30, 1985, and the last defendant was served on April 16, 1986, less than four months later.

19. Although the question of standing was not addressed in No. 86–5612, we believe that our comments here are equally applicable to the two cases.

authorization, it should have done so before the arbitrator.

Secondly, and more importantly, appellant has alleged that it has authority from the National Union to prosecute the suit. This is sufficient to withstand a *motion to dismiss.* Appellee's assertions that appellant may not "rest on the allegations of its pleadings" only apply where a *properly supported* summary judgment motion is made. Merely applying the label "motion for summary judgment" to a pleading does not make it one. Appellee filed no affidavits or testimony in support of its purported summary judgment motion. In fact, appellee filed nothing that could properly controvert the allegation of authorization by the National. In 86–5611 (the case in which the district court relied on standing) the district court made clear that it was granting a motion to dismiss and that supporting affidavits would have been necessary for summary judgment. Appellant correctly asserts that, as no responsive pleading had yet been served on it, it had an absolute right to amend its complaint. Fed.R.Civ.P. 15(a). The district court's dismissal for lack of "standing," without considering the allegation of authorization, was error.[20]

## VI

For the reasons stated above, the judgments of the district court are REVERSED and the causes REMANDED for further proceedings consistent with this opinion.

---

[20]. Again we note the cases were dismissed at the pleading stage. Proper support for the standing allegation may, of course, be tested on a properly supported summary judgment motion or even at trial. Also, we decline appellee's invitation to decide the merits of the action to vacate. In addition to the fact that orderly procedure dictates that the district court decide this question in the first instance, we have serious doubt whether the question is ripe for summary judgment on the record before us.