61 F.3d 911
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
INTERNATIONAL UNION, INTERNATIONAL UNION OF SECURITY
OFFICERS, LOCAL UNION NO. 2, Plaintiff - Appellant,
v.
BURNS INTERNATIONAL SECURITY SERVICES, Defendant - Appellee.
 No. 94-15115.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 14, 1995.
Decided July 12, 1995.
 
 Before: HUG, ALARCON, AND TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 International Union of Security Officers Local No. 2 ("Local 2") appeals the district court's grant of summary judgment in favor of Burns International Security Services ("Burns") and order denying Local 2's petition to compel arbitration of a grievance pursuant to 29 U.S.C. Sec. 185(a). The district court concluded Local 2 did not have standing to compel arbitration under the collective bargaining agreement between Burns and the International Union of Security Officers ("IUSO"). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291 and we affirm.
 
 
 3
 Local 2 contends it has standing to compel arbitration even though it was not a signatory to the collective bargaining agreement. Local 2 bases its position on three grounds: 1) Local 2 was an intended beneficiary of the Agreement between IUSO and Burns; 2) the parties' past practice; and 3) IUSO's express delegation of its authority to Local 2 to enforce the terms of the collective bargaining agreement. Local 2's position is unsupported by fact or law.
 
 
 4
 The analytical framework for determining whether Local 2 has standing to compel arbitration under the Agreement is set out in McKinstry Co. v. Sheet Metal Workers' Int'l Ass'n, Local Union # 16, 859 F.2d 1382 (9th Cir. 1988). In McKinstry, this court stated:
 
 
 5
 Where the contract contains an arbitration clause, there is a presumption of arbitrability....
 
 
 6
 However, where one of the parties seeking arbitration is not a signatory to the underlying agreement, a further step is added to the inquiry. Before the presumption of arbitrability can apply, the nonsignatory party must show that the signatories intended it to derive benefits from the agreement. Where such intent can be shown, and where the arbitration clause is susceptible to the interpretation that the nonsignatory has the right to enforce these benefits, then arbitration is proper.
 
 
 7
 The question of arbitrability--whether the parties are to be compelled to arbitrate--is ultimately decided by the court, not the arbitrator, on the basis of the contract entered into by the parties.
 
 
 8
 Id. at 1384-85 (footnotes omitted). This approach is supported by the recent Supreme Court case, First Options of Chicago, Inc. v. Kaplan, 63 U.S.L.W. 4459 (May 22, 1995). The Supreme Court stated that if "the parties did not agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely independently." Id. at 4461. The Court went on to say that "when courts decide whether a party has agreed that arbitrators should decide arbitrability: Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." Id. (quoting AT & T Technologies, Inc., v. Communications Workers, 475 U.S. 643, 649 (1986)).
 
 
 9
 Local 2 begins by arguing that the Agreement confers both direct and indirect benefits upon it and, therefore, it has standing to enforce the terms of the Agreement. Local 2 reasons that because the territorial reach of the Agreement as defined in Article I includes the area covered by Local 2, the employees of Burns represented by Local 2 in Santa Clara County derive the benefits of the Agreement, thus benefitting Local 2. Local 2 relies on McKinstry as support for this proposition. McKinstry, however, is easily distinguishable from the instant case.
 
 
 10
 In McKinstry, a standard form of union agreement was negotiated at the national level between the Sheet Metal Workers' International Association ("SMWIA") and the Sheet Metal and Air Conditioning Contractors National Association ("SMACNA"). McKinstry, 859 F.2d at 1383. This standard form was used as a starting point for negotiations between local unions and employers who would then sign as parties to the agreement. Id. McKinstry, a local contractor in the Seattle area, assigned his bargaining rights to the local chapter of SMACNA ("SMACNA of Western Washington"). Id. SMACNA of Western Washington reached a collective bargaining agreement with Sheet Metal Workers' Local Union No. 99 ("Local 99") covering several counties in Western Washington, which McKinstry signed. Id.
 
 
 11
 Subsequently, McKinstry bid on a contract for a project in Portland. Id. Sheet metal workers in the Portland area were represented by Sheet Metal Workers International Association Local Union No. 16 ("Local 16"). Id. at 1384. Local 16 challenged McKinstry's proposed use of a subcontractor who was not a signatory to the McKinstry/Local 99 Agreement. Id. Local 16 requested a meeting with McKinstry pursuant to the grievance procedure provisions of the McKinstry/ Local 99 Agreement. Id. McKinstry refused to recognize Local 16's right to file a grievance under the agreement with Local 99.
 
 
 12
 This court concluded that the intent of the McKinstry/Local 99 agreement was to benefit local unions outside of the geographical area covered by the agreement. The court relied on the following language of the agreement:
 
 
 13
 SECTION 5. Except as provided in Sections 2 and 6 of this Article, the Employer agrees that journeymen sheet metal workers hired outside of the territorial jurisdiction of this Agreement shall receive the wage scale and working conditions of the local Agreement covering the territory in which such work is performed or supervised.
 
 
 14
 SECTION 6. When the Employer has any work specified in Article 1 of this Agreement to be performed outside of the area covered by this Agreement and within the area covered by another agreement with another union affiliated with the Sheet Metal Workers' International Association, and qualified sheet metal workers are available in such area, he may send no more than two (2) sheet metal workers per job into such area to perform any work which the Employer deems necessary, both of whom shall be from the employer's home jurisdiction. All additional sheet metal workers shall come from the area in which the work is to be performed. Journeymen sheet metal workers covered by this Agreement who are sent outside of the area covered by this Agreement shall be paid at least the established minimum wage scale specified in Section 1 of this Article but in no case less than the established wage scale of the local Agreement covering the territory in which such work is performed or supervised ... and the Employer shall be otherwise governed by the established working conditions of that local Agreement. If employees are sent into an area where there is no local Agreement of the Sheet Metal Workers International Association covering the area then the minimum conditions of the home local union shall apply.
 
 
 15
 Id. at 1385-86. In addition, Article I, Section 1 of the agreement stated that the agreement covers the "'conditions of employment of all employees of the Employer."' Id. at 1386.
 
 
 16
 The court concluded "[t]he Agreement as a whole was clearly intended to extend certain direct and indirect benefits to workers other than those represented by Local 99." Id. Therefore, the court held "Local 16 was accorded rights under this Agreement, and was accorded the ability to enforce these rights by bringing a grievance under Article X." Id. at 1388.
 
 
 17
 In the instant case, the Agreement was not signed by a local union, but rather, by the international union, IUSO. In addition, the Agreement contains no language similar to that in McKinstry. Rather, the Agreement in the instant case provides in relevant part:
 
 
 18
 This agreement is entered into this 15th day of June, 1990, between the International Union of Security Officers (hereinafter referred to as the "Union") and Burns International Security Services (hereinafter referred to as the "Employer").
 
 ARTICLE 1
 RECOGNITION
 
 19
 The Employer recognizes the Union as the exclusive representative for the purpose of collective bargaining of all employees employed by the Employer as Guards, Watchmen, Patrolmen, Fire Patrol and/or Security Officers servicing client locations in San Francisco, Alameda, Santa Clara and Contra Costa Counties, now and in the future, who are not presently covered by the Waterfront Agreement....
 
 
 20
 ....
 
 ARTICLE XXIV
 GRIEVANCE PROCEDURE
 
 21
 ....
 
 
 22
 Step 3. A grievance that is not satisfactorily resolved at Step 2 shall be referred to an impartial arbitrator upon request by either party to this Agreement....
 
 
 23
 (Emphasis added.) Furthermore, the Agreement makes no reference to workers employed by Burns who work outside of the territorial jurisdiction of the agreement. Workers belonging to Local 2 receive no benefits under the Agreement other than what they receive by virtue of their membership in IUSO. Nowhere in the Agreement is any mention made of local unions, much less Local 2 specifically. Therefore, the Agreement does not intend to confer benefits upon local unions as was the case in McKinstry.
 
 
 24
 The instant case is controlled by this court's decision in Local 13, Int'l Longshoreman's & Warehouseman's Union v. Pacific Maritime Ass'n, 441 F.2d 1061 (9th Cir. 1971), cert. denied, 404 U.S. 1016 (1972). In Local 13, Pacific Maritime Association ("the Association") entered into a collective bargaining agreement with the International Longshoremen's and Warehousemen's Union ("the International") covering substantially all longshore work on the Pacific Coast. Id. at 1062. Local 13, an affiliate of the International, commenced an action to set aside an arbitration award resulting from a dispute between the Association and the International. Id. at 1063.
 
 
 25
 This court examined the language of the collective bargaining agreement to determine whether Local 13 had standing to challenge the arbitration award. The court stated:
 
 
 26
 The opening recitation of the collective bargaining agreement is that the contract is one "by and between Pacific Maritime Association (hereinafter called 'the Association'), on behalf of its members ... and the International Longshoremen's and Warehousemen's Union (hereinafter designated as 'the Union'), on behalf of its itself and each and all of its longshore locals." The contract also declares that "the parties hereto are" the employers' association and the International union. Section 17, which details the grievance procedures, refers to the "parties," the "Union," and the "Employer" (or "Association"). Nowhere in section 17 are the locals mentioned.
 
 
 27
 The intention to vest control over grievance procedures in the International union on the one hand and the employers' association on the other seems as a clear as language could make it short of explicit statement.
 
 
 28
 Id. at 1064. Therefore, the court concluded Local 13 was not a "party" to the arbitration and could not challenge the arbitration. Id. at 1065.
 
 
 29
 The language of the Agreement in the instant case is virtually identical. The preamble states that Burns and IUSO are the only parties to the Agreement. The grievance procedure provisions state that a grievance only can be filed by an employee or an officer of IUSO and that arbitration can be compelled only by Burns or IUSO (the parties to the Agreement). No mention is made of local unions.
 
 
 30
 Local 2 attempts to distinguish Local 13 because in that case the interest of the local union was adverse to the interest of the International. This fact, however, has no bearing on the interpretation of the language of the Agreement. Whether the interests of the local and parent unions are aligned or in conflict is not relevant to answering the question of whether the Agreement was intended to confer a benefit on the local union. IUSO's attempt to intervene on behalf of Local 2, likewise, is of no significance in interpreting the Agreement.
 
 
 31
 Therefore, under Local 13, the Agreement in the instant case clearly does not support the interpretation Local 2 would have this court adopt. Local 2 is not an intended beneficiary of the contract and does not have standing to compel arbitration.
 
 
 32
 Local 2 next argues that even if the express language of the Agreement did not indicate an intention to benefit Local 2, the conduct of the parties did. Local 2 notes that in the past it had filed grievances directly with Burns and that Burns had responded to those grievances. Local 2 also points to the fact that Burns paid dues and initiation fees of IUSO member directly to Local 2. These facts, however, are insufficient to counter the clear language of the agreement.
 
 
 33
 First, as to the letters of grievance filed with Burns by Local 2, the record shows that only three grievances were filed by Local 2 in a sixteenth month period and that each of these grievances was withdrawn. That Burns was willing to deal with Local 2 in order to resolve minor problems does not indicate an attempt to modify the terms of the Agreement. And second, Burns paid the dues and initiation fees directly to Local 2 at IUSO's request. These practices are insufficient to establish a genuine issue of material fact as to whether Local 2 was an intended beneficiary of the contract.
 
 
 34
 Finally, Local 2 contends IUSO delegated its authority to compel arbitration to Local 2. This argument actually raises two separate issues: 1) did IUSO delegate its authority to compel arbitration to Local 2; and 2) did IUSO authorize Local 2 to act as its representative to compel arbitration in this matter.
 
 
 35
 As to the first issue, the Agreement does not give IUSO the unilateral power to delegate its authority to compel arbitration to a third party. Local 2 relies on American Postal Workers Union, AFL-CIO v. United States Postal Service, 823 F.2d 466 (11th Cir. 1987), to support its position that IUSO had the authority to delegate its power to compel arbitration to the local union.
 
 
 36
 American Postal is distinguishable, however, because the collective bargaining agreement in that case expressly allowed the National Union President to authorize local unions to arbitrate appropriate matters. Id. at 468. There are no such provisions in the Agreement in the instant case. Local 2 has failed to cite any authority, contractual or legal, for the proposition that IUSO had the power to delegate its blanket authority to compel arbitration to a nonsignatory party.
 
 
 37
 As to the second issue, the law clearly gives IUSO the authority to appoint a local union as its representative to handle a grievance. See Whisper Soft Mills v. NLRB, 754 F.2d 1381, 1386 (9th Cir. 1985). The real issue is a factual one: whether IUSO actually appointed Local 2 as its representative.
 
 
 38
 Local 2 relies on a letter from IUSO to Burns as evidence that IUSO authorized Local 2 to act as its representative in this grievance. The letter states:
 
 
 39
 This letter is a follow up to the phone conversations of August 25th and Sept. 29th. On August 25th, Vice - President Ulreich told you that I was upset over the company taking the position that the only people they would meet with on a grievance filed by Local #2 would have to be with a person or persons from the International office in San Leandro. Vice - President Ulreich told you that your position was wrong and that you or your representative of the company had to meet with Local #2.
 
 
 40
 On Sept. 28th Vice - President Ulreich and I had a conversation with Mr. Atkins on this issue. We both told Mr. Atkins that the position taken by the company was wrong. We both told him more than once that the company had to meet with Local #2 Representative(s) if a grievance is filed by a member of the Local, or if a grievance is filed by Local #2 on behalf of a member or members.
 
 
 41
 (Emphasis added.) The language of this letter falls short of expressly appointing Local 2 as its representative. Rather, the letter states IUSO's position that Local #2 has the power to unilaterally compel arbitration, a position which is incorrect.
 
 
 42
 The district court specifically considered this question at the hearing on the motion for summary judgment and arrived at the same conclusion:
 
 
 43
 THE COURT: ... THE QUESTION IS WHETHER OR NOT THE GRIEVANCE WAS BEING INITIATED BY A UNION OFFICER OF IUSO, AND I'M CONTENT THAT I WOULD DECIDE THIS ADVERSELY TO BURNS IF INTERNATIONAL SAYS THAT LOCAL TWO WAS AUTHORIZED TO DO THIS ON OUR BEHALF. THE GRIEVANCE WAS BEING FILED BY INTERNATIONAL SIMPLY THROUGH A DESIGNEE, AND I AGREE BURNS DOESN'T HAVE THE RIGHT TO SAY WHO INTERNATIONAL MAY USE FOR THAT PURPOSE. MY QUESTION CAME WHEN I CAME TO THE CONCLUSION THAT INTERNATIONAL HAD BY ITS CONDUCT INITIATED ITS OWN GRIEVANCES, AND SO IT WASN'T THE CASE THAT IT USED LOCAL TWO FOR THAT PURPOSE, AND IT ALSO APPEARS TO ME THAT INTERNATIONAL DID NOT TAKE THE POSITION THAT IT HAD INITIATED THIS GRIEVANCE.
 
 
 44
 ....
 
 
 45
 THE COURT: I'M HAPPY TO HAVE YOU READ THIS [referring to the September 30 letter from IUSO to Burns], BUT WHAT I'M LISTENING TO, THOUGH, IS I'M TRYING TO GET YOU TO A POINT WHERE THE LETTER SAID AND LOCAL TWO IS AUTHORIZED TO AND IS PROSECUTING THIS GRIEVANCE ON BEHALF OF INTERNATIONAL.
 
 
 46
 We agree with the District Court that the letter did not authorize Local 2 to prosecute this grievance on behalf of IUSO.
 
 
 47
 Because IUSO does not have the authority to delegate its general power to compel arbitration to Local 2, and because the record does not support Local 2's position that is was authorized by IUSO to act as its representative in this matter, Local 2 does not have standing compel arbitration with Burns. Therefore, the judgment of the district court is
 
 
 48
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3