PITTSBURGH METRO AREA POSTAL
WORKERS UNION, AFL–CIO,
Plaintiff,

v.

UNITED STATES POSTAL
SERVICE, Defendant.

Civ. A. No. 78–590.

United States District Court,
W. D. Pennsylvania.

Nov. 17, 1978.

Joseph J. Pass, Jr., Pittsburgh, Pa., for plaintiff.

Anthony W. DuComb, U. S. Postal Service, Philadelphia, Pa., Henry Barr, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

## OPINION

SNYDER, District Judge.

The United States Postal Service moves to dismiss the action of the Pittsburgh Metro Area Postal Workers Union (Metro) in which it seeks to enforce a settlement of a labor grievance. The Motion will be granted.

## I. BACKGROUND

There were two disputes between Metro, which represents Pittsburgh area postal workers, and the Postal Service as to where secondary mail in the Pittsburgh Post Office would be distributed, i. e. where mail would be broken down into individual carrier routes. Prior to July 1976, the majority of incoming secondary mail was distributed at the Main Office in Downtown Pittsburgh for 35 branches and stations, while seven other branches and stations distributed their own secondary mail. On July 12, 1976, the secondary distribution for three of these seven stations was transferred to the Main Office. On October 7, 1976, Metro

filed a grievance pursuant to the National Agreement between the United States Postal Service and the American Postal Workers Union, et al. (the Agreement), protesting that some secondary mail was still being sent to three of the stations. The dispute was settled prior to final arbitration, as evidenced in a letter written by Frank Buttner, Employee and Labor Relations Director for the Pittsburgh Post Office, to Metro's Business Agent on December 3, 1976, stating, "[t]he amount of mail sent to the stations and branches must be predicated on their capabilities to work this mail without jeopardizing any overtime opportunities for mail processing clerks." The effect was that secondary mail would be sent to stations and branches only after the clerks at the Main Office had been given the opportunity to work maximum overtime. In April of 1978, the Postal Service announced a decision to transfer secondary distribution of two classes of mail, Irregular Parcel Post and First Class Small Parcels and Rolls, to certain stations and branches.

## II.  THE CONTENTIONS

Metro maintains that the new distribution procedure is a violation of the 1976 settlement and asks this Court to enforce the terms of that settlement, and argues that the Postal Service's failure "to abide by the final and binding decision of the grievance settlement procedure of the collective bargaining agreement renders the collective bargaining agreement and its grievance settlement provision a nullity and amounts to a blatant repudiation of the Agreement." (Complaint ¶ 10)

The Postal Service argues that Metro is a "local" division of the national union, is not a signatory to the national agreement, and "does not have standing" to bring this action.[1]

1.  The National Labor Relations Board has held that the National Postal Unions designated in the recognition clause of the Agreement are the appropriate bargaining unit for postal employees because "any less than nation-wide unit

## III.  DISCUSSION

At least two district courts appear to have permitted local branches of the national postal union to bring actions involving the national agreement. *American Postal Workers Union, Dallas Area Local v. United States Postal Service*, 396 F.Supp. 608 (N.D.Tex.1975); *American Postal Workers Union v. United States Postal Service*, 356 F.Supp. 335 (E.D.Tex.1972) (Plaintiff was the Tyler, Texas local). In neither case, however, was the question of the local's right to bring the action discussed.

In *District 100, I.A.M. v. Campagnie Nationale Air France*, 414 F.Supp. 538 (S.D.N.Y.1976), a district lodge of the International Association of Machinists and Aerospace Workers sought to compel the airlines to process a grievance. The Court granted the company's motion to dismiss, stating:

"Even though the General Chairman of District 100 is authorized to sign collective bargaining agreements, it is clear that he signs *on behalf of the IAM*, not District 100. While District 100 may properly provide an authorized representative to handle grievance procedures at particular points on the system,  .   .   . it cannot arrogate to itself the authority to sue as a party to a national labor agreement.

\*     \*     \*     \*     \*     \*

*Local Union No. 12405, District 50, UMW v. Martin Marietta Corp.,* 328 F.2d 945 (7th Cir. 1964), *cert. den.,* 379 U.S. 880, 85 S.Ct. 147, 13 L.Ed.2d 87 (1965) cited by Air France, is apposite. There, as here, a local union brought suit to enforce provisions of a collective bargaining agreement to which it was not a party. The court affirmed dismissal of the suit on the ground that the corporation agreed to arbitrate disputes only with the bargaining agent and not with individual employees or their *Local* representative. The court relied on reasoning,

which does not at least encompass all employees within a district or sectional center is too fragmented for meaningful collective bargaining." *United States Postal Service,* 208 NLRB 948 (1974).

applicable here, that the bargaining agent alone must have the power to decide which grievances to pursue so that the interests of *all* its principals may be best represented."

414 F.Supp. at 541–2.

The District Court in *BRAC v. REA Express, Inc.,* 344 F.Supp. 1370 (S.D.N.Y.1972), reached the same conclusion concerning a dispute between the national union (Brotherhood of Railway, Airline and Steamship Clerks) and a local, subordinate unit (National Association of Express General Chairmen) over whether BRAC's International President had the authority to sign an arbitration agreement that was binding on the local organization and did, in fact, lead to an arbitration award. In dismissing the local's suit on behalf of BRAC to impeach the arbitration award, the Court said:

"The power to bring suit is one of the most important powers an organization has and must necessarily vest either in the organization's sovereign body or in the individual or group exercising general supervision of the organization. Obviously, it would create a chaotic situation if every subordinate unit were empowered to bring suit on BRAC's behalf without receiving authorization from the international president or the Grand Lodge [the national organization].

Nowhere in the constitution, statutes or protective laws of BRAC or in the by-laws of the National Association of Express General Chairmen is any subordinate unit of the union given authority to sue in the name of the union.

\* \* \* \* \* \*

BRAC is the collective bargaining agent for the employees. It signed the collective bargaining agreement whose terms it claimed were breached when it instituted the injunction suit. The agreement required arbitration of disputes. The agreement to arbitrate was signed by the parties to the collective bargaining agreement. Under the circumstances an attack on the authority of the international president of BRAC cannot be launched by the method adopted here."

344 F.Supp. at 1372.[2]

Counsel for the Postal Service has brought to our attention an unpublished order of dismissal, entered on January 16, 1978 in the case of *National Post Office Mail Handlers, Local 305 v. United States Postal Service,* No. 77–41–CIV–8, brought in the United States District Court for the Eastern District of North Carolina, where the Postal Service refused to abide by resolutions of grievances favorable to the union that were reached at intermediate steps of the grievance procedure set forth in the national collective bargaining agreement. Judge F. T. Dupree, Jr., dismissed that action on the grounds that the union lacked standing to sue and had failed to exhaust its arbitration remedy. We concur.

The national agreement in the instant case includes provisions for local unions and their representatives. Agreement, Article II, Section 2 (regional level Joint Committees on Human Rights); Article XIII, C (local negotiations over light duty assignments for ill or injured employees); Article XIV, Sections 4–9 (local safety and health committees); Article XV, Section 2 (regional representation of employees in the initial stages of the grievance procedure); Article XVII, Section 5 (local union's responsibility to implement "no strike" clause); Article XXX (local negotiation and implementation of 22 specific items). No provision is made that the locals, such as Metro, are free to sue on matters concerning the national contract. Although this action is one to enforce a local settlement agreement, it was brought under the grievance procedures in the national agreement to enforce the Postal Service's contractual obligations under the national agreement. Those same grievance provisions do not allow a local even to

---

**2.** Both *District 100, I.A.M. v. Campagnie Nationale Air France,* 414 F.Supp. 538 and *BRAC v. REA Express, Inc.,* 344 F.Supp. 1370, were decided under the Railway Labor Act, 45 U.S.C.A.

§ 151 *et seq.* Nevertheless, the principles relating to the relationship of the national and local unions are applicable here.

arbitrate an issue without written authorization to the employer at the national level from the national president. Agreement, Article XV, Section 3.

Metro here claims the right to enforce those provisions in court without the permission of the national organization. This, to us, is inconsistent with the terms of the contract, and, when viewed together with the fact that Metro is not a signatory of the agreement and has made no showing of a special grant, i. e. pursuant to the national union's constitution or by-laws, compels the conclusion that they cannot bring this action.

## IV. ENFORCEABILITY OF THE SETTLEMENT

While not required for our discussion, we also express our serious doubts as to whether the settlement agreement in this case is enforceable in the District Court. A District Court has jurisdiction pursuant to 29 U.S.C.A. § 185, and, therefore, under 39 U.S.C.A. § 1208,[3] to enforce a resolution of a grievance that is final and binding under a collective bargaining agreement, although it is not an arbitration award. *General Drivers, Warehousemen & Helpers, Local No. 89 v. Riss & Co.,* 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963). Accord, *Teamsters Local Union v. Braswell Motor Freight Lines,* 392 F.2d 1 (5th Cir. 1968), *cert. denied* 401 U.S. 937, 91 S.Ct. 926, 28 L.Ed.2d 217 (1971); *International Union of Operating Engineers v. Dow Chemical Co.,* 348 F.Supp. 1149 (S.D.Tex. 1972).

In *UMW, District 2 v. Barnes and Tucker Co.,* 561 F.2d 1093 (3rd Cir. 1977), the action for specific performance of a grievance settlement agreement was dismissed. The Court of Appeals affirmed on the grounds that the terms of the settlement were not sufficiently specific to allow enforcement and would require the district court to interpret the collective bargaining agreement; they also held that agreements to settle grievances before submission of the issue to arbitration were enforceable under the National Bituminous Coal Wage Agreement of 1971, because "[B]y the *express terms* of the Agreements, settlements reached at any step [of the grievance procedure] are final and binding on both parties." 561 F.2d at 1095 (Emphasis added). The Court reasoned:

"We agree with the Union that where a *collective bargaining agreement designates settlement agreements as being final and binding,* the fact that a settled grievance does not proceed to arbitration does not preclude judicial enforcement of the settlement agreement.

\* \* \* \* \* \*

It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is no less enforceable in a federal court than is an arbitration award.

\* \* \* \* \* \*

In this case, *both* the 1971 and 1974 *Agreements provide that settlements reached at any step of the grievance procedures shall be final and binding* on both parties. We therefore believe that the settlement agreements at issue are as enforceable as arbitration awards."

561 F.2d at 1096, 1097 (Emphasis added).

The collective bargaining agreement now before the Court contains no provisions comparable to those in the Mineworkers contract; to the contrary, it provides "[t]he arbitrator's decision will be final and binding." (Agreement, Article XV, Section 3, page 26). To conclude that the 1976 settlement here is enforceable by "local" action would be inconsistent with the power of the

---

**3.** The language of 39 U.S.C.A. § 1208 closely tracks that of the Labor Management Relations Act, 29 U.S.C.A. § 185, and has been interpreted in a parallel fashion. *Miles v. United States Postal Service,* 561 F.2d 1348 (9th Cir. 1977).

national leadership to decide which issues will go to arbitration for resolution in a fashion that is final and binding on all members of the union. Metro, the local union here, urges an interpretation of its powers that would allow it or the Postal Service to seek a final and binding determination of an issue, perhaps a much disputed and important issue, on a strictly local basis, which would oust any power on the part of the national organization to seek a different resolution of the problem as to those particular local employees.

## V. FAILURE TO EXHAUST GRIEVANCE PROCEDURES

■ Finally, we believe, this Complaint must be dismissed for failure to exhaust the grievance procedures. Even if the settlement agreement was final and binding under the collective bargaining agreement, there is a serious question here as to whether the changes made by the Postal Service which led to the 1976 settlement and those which triggered the current dispute are sufficiently alike for the earlier agreement to render further grievance procedures unnecessary. Resolution of that question is itself one properly for the grievance machinery.

In *Local 103, I.U.E. v. RCA Corp.*, 516 F.2d 1336 (3rd Cir. 1975), the Court of Appeals held that the lower court could not enjoin the company's effort to proceed with arbitration on the ground that the issue had previously been subject to arbitration, stating:

"Although we affirm the judgment of the district court, we do so for a different reason: It is the function of the arbitrator, not the court, to decide whether the 'same question or issue' had been the subject of arbitration within the meaning of the collective bargaining agreement.

The union would have a federal court interpret this collective bargaining agreement and rule, as a matter of federal law, that the question or issue presented in the current grievance was the subject of arbitration in 1946. We decline to allo-

cate this interpretive role to the district courts."

516 F.2d at 1339 (Footnote omitted).

The Court based its decision primarily on the principle that the district court is restricted to deciding whether a grievance is the type of dispute covered by the arbitration provisions of a particular collective bargaining agreement. *John Wiley & Sons v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The Court also noted, however, that the collective bargaining agreement contained a clause expressly prohibiting rearbitration of grievances and that any resolution of the question of whether the issue had already been the subject of arbitration would involve the district court in the interpretation of that provision.

In *Avco Corp. v. Local 787, UAW*, 459 F.2d 968 (3rd Cir. 1972), the Court of Appeals reversed a District Court's denial of injunctive relief against employees who were refusing en masse to work overtime in contravention of a "no strike" clause in the collective bargaining agreement. In addition to deciding that the company had a right to initiate arbitration under the "employee-oriented" grievance machinery, the Court held that the District Court erred in deciding the question of whether the company's grievance was barred by a prior arbitration award which did not · involve an identical fact situation. The Court of Appeals based its ruling on two grounds: (1) where there is a question as to the arbitrability of a grievance, all doubts must be resolved in favor of arbitration, *United Steelworkers of America v. Enterprise Wheel & Car*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960); and (2) an arbitrator, rather than a court, should resolve the issue of whether the determination of the first arbitrator was applicable to the second grievance. On this latter point, the Court stated:

"The prior arbitration here held the issue of compulsory overtime was properly subject to the arbitration provision, and this much of the arbitrator's decision might well constitute a form of res judi-

cata precluding the Union from relitigating that narrow issue. *See Local 616, IUE v. Byrd Plastics, Inc.,* 428 F.2d 23, 26 (3rd Cir. 1970). But res judicata would not bar arbitration of the underlying dispute here because the other issues disposed of in the first arbitration are not identical with those which would face the arbitrator if this matter were before him. First, the arbitrator would have to decide whether the action taken by Avco with respect to the employees who refused overtime in April, 1970, effectively terminated the condonation [of the refusal] upon which the first decision relied. If not, the arbitrator would then have to decide whether the first decision, framed in the context of individual action on the part of individual employees, applied to the concerted action of all employees. And in conjunction with that decision, the arbitrator would have to decide whether Avco had condoned in the past a concerted refusal to work overtime. Accordingly, the dispute was a proper subject matter for arbitration and was covered by the broad grievance procedure of the collective bargaining agreement."

459 F.2d at 973–4 (Footnote omitted).

Accord: *International Chemical Workers, Local No. 189 v. Purex Corp.,* 427 F.Supp. 338 (D.Neb.), *affirmed* 566 F.2d 48 (8th Cir. 1977). Also see *Macneish v. New York Typographical Union No. 6,* 205 F.Supp. 558 (S.D.N.Y.1962); but see *Drake Motor Lines, Inc. v. Highway Truck Drivers and Helpers, Local 107 et al.,* 343 F.Supp. 1130 (E.D.Pa. 1972) (Court granted summary judgment for plaintiff-company in an action to enjoin arbitration of a labor grievance on the grounds that an earlier grievance involving identical parties, facts, and legal issues had already been arbitrated.)

Here, the initial grievance involved the transfer of secondary mail to a small number of branches and stations. The current dispute concerns a change affecting the entire Pittsburgh Post Office as to only two classes of mail; the factual circumstances are far from identical. In addition, resolving this dispute raises complex considera-

tions involving the efficient running of the Postal Service and implicating several provisions of the national collective bargaining agreement, including Article III, which protects management prerogatives. These are problems best resolved, whenever possible, by an arbitrator familiar with the language and workings of the shop and with "industrial common law". We have been reminded that even the "ablest judge cannot be expected to bring the same experience and competence [as an arbitrator] to bear upon the determination of a grievance, because he cannot be similarly informed." *Local 103, I.U.E. v. RCA Corp., supra,* at 1340, citing *Lewis v. A.F.S.C.M.E.,* 407 F.2d 1191 (3rd Cir.), *cert. denied* 396 U.S. 866, 90 S.Ct. 145, 24 L.Ed.2d 120 (1969).

An appropriate Order will be entered.