**AMERICAN POSTAL WORKERS UN-ION, AFL–CIO, PHILADELPHIA, PA AREA LOCAL, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civil Action No. 01–4396.**

United States District Court, E.D. Pennsylvania.

Aug. 27, 2002.

---

Laurence M. Goodman, Willig, Williams & Davidson Philadelphia, PA, for Plaintiff.

James G. Sheehan, K.T. Tomlinson, U.S. Attorney's Office, Philadelphia, PA, for Defendant.

## MEMORANDUM

DuBOIS, District Judge.

## I. INTRODUCTION

In this litigation, plaintiff, the American Postal Workers Union, AFL–CIO, Philadelphia, PA Area Local ("Local Union") contends that defendant, the United States Postal Service ("Postal Service"), has refused to comply with two arbitration awards and one grievance settlement agreement requiring the Postal Service to pay back wages to three employees. The Local Union commenced this action on behalf of the three employees on August 28, 2001, seeking in the Complaint enforcement of the awards and grievance settlement agreement under the Postal Reorganization Act, 39 U.S.C. § 1208.[1]

Currently pending before the Court are Defendant's Motion for Summary Judgment (Document No. 2, filed November 30, 2001) and Plaintiffs' Cross–Motion for Summary Judgment (Document No. 6, filed January 16, 2002).

The Postal Service filed its summary judgment motion as its response to the Local Union's Complaint. During a preliminary pretrial conference, the Local Union informed the Court that it did not need any discovery to respond to the Postal Service's motion. The parties' agreement to proceed without discovery is embodied in the Court's January 2, 2002, Scheduling Order. The Court concludes the case can be decided on summary judgment motions because there are no factual disputes.

The pending motions present two issues for the Court's resolution: (1) whether the Local Union is authorized to bring a federal enforcement action; and (2) assuming the Local Union is authorized to bring suit, whether the Postal Service may, under the terms of a national collective bargaining agreement, decline to pay arbitrator-ordered, or agreed-upon, back wages based on the Postal Service's unilateral determination that the employees did not properly mitigate their damages.

1. The statute provides that "[s]uits for violation of contracts between the Postal Service and a labor organization representing Postal Service employees, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy." 39 U.S.C. § 1208(b). This section, and the relief it permits, is similar in scope to Section 301(a) of the Taft–Hartley Act. *American Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 823 F.2d 466, 469 (11th Cir.1987).

For the reasons stated in this Memorandum, the Court concludes, first, that the Local Union may bring this federal enforcement action. Second, the Court concludes that the Postal Service has impermissibly refused to pay back wages in accordance with two arbitration awards. With respect to the grievance settlement agreement, however, the Court determines that the Local Union's claims are mooted in view of the Postal Service's uncontradicted evidence that it has complied with the terms of the agreement. Accordingly, the Court will enter judgment in favor of plaintiff with respect to the two arbitration awards and enter judgment in favor of defendant with respect to the grievance settlement agreement.

## II. *BACKGROUND*

In this section, the Court sets forth the relevant facts and procedural history with respect to the underlying arbitration awards and grievance settlement agreement. Additional facts are set forth in the Court's analysis of the Postal Service's argument that it acted properly in declining to pay back wages in accordance with arbitration awards. *See infra* § III.B.2.a.

The Postal Service is party to a national Collective Bargaining Agreement ("CBA") with the national American Postal Workers Union ("National Union"). The Local Union, an affiliate of the National Union, is party to local Memoranda of Understanding with the Postal Service. Complaint at ¶ 5. Article 15 of the CBA[2] contains a grievance and arbitration procedure for "final and binding" arbitration of any disputes between the Union and the Postal Service. *Id.* at ¶ 6. This litigation involves Article 15 arbitration proceedings commenced by the Local Union on behalf of three employees, all of which resulted in an ordered or agreed-upon award of back pay for the employees.

The first employee, Bradford Benbow, was discharged from his employment with the Postal Service on November 13, 1998. *Id.* at ¶ 9. The Local Union filed a grievance on Benbow's behalf claiming that his discharge was without just cause. After a May 9, 2000, arbitration hearing, on June 22, 2000, the arbitrator issued an award sustaining the Local Union's grievance, ordering Benbow's reinstatement, and awarding Benbow "full back pay, benefits and seniority." *Id.* at ¶¶ 10–12. Thereafter, in correspondence dated September 28, 2000, the Postal Service informed Benbow that it would not pay any back wages. *Id.* at ¶ 13. The Postal Service's decision to deny back wage payments, as stated in the letter, was based on the fact that Benbow failed to comply with the Postal Service's Employee and Labor Relations Manual, section 436.425, which, in relevant part, instructs employees: "If the back pay period is more than six months and no outside employment was obtained, make a statement giving the reasons why outside employment was not obtained and furnish a resume of the efforts to secure other employment during the back pay period." *Id.* at Ex. D. Because Benbow failed to provide sufficient information to demonstrate that he "diligently sought employment to replace [his] position with the Postal Service," his claim for back pay was "disallowed." *Id.*

The second employee, Joseph Shore, was discharged from his employment with the Postal Service on January 29, 1999. *Id.* at ¶ 16. The Local Union filed a grievance on Shore's behalf claiming that his discharge was without just cause. After a May 17, 2000, arbitration hearing, on June 18, 2000, the arbitrator issued an award sustaining the Local Union's grievance, ordering that Shore's discharge be reduced to a fourteen-day suspension, and award-

---

**2.** All relevant portions of Article 15 are set     forth at Def.'s Mot., Ex. A.

ing Shore reinstatement, "full back pay, less the period of the 14-day suspension." *Id.* at ¶¶ 17–19. Thereafter, on September 28, 2000, the Postal Service informed Shore that it would not pay any back wages. *Id.* at ¶ 20. The reason for the Postal Service's decision to deny back pay to Shore was the same as that stated in the Postal Service's September 28, 2000, letter to Benbow. *Id.* at Ex. F.

The Local Union claims that the Postal Service has "wrongfully continued its refusal to comply" with the Benbow and Shore arbitration awards. *Id.* at ¶¶ 14, 21. Further, the Local Union asserts in its Complaint that the Postal Service is "estopped" from refusing to pay back wages "based on the employees' alleged failure to make reasonable efforts to obtain other employment during their periods of removal" because the Postal Service never raised this contention at arbitration. *Id.* at ¶ 1.

The third, and final, employee for whom the Local Union seeks relief is Linda Perry, whom the Postal Service discharged on December 23, 1997. *Id.* at ¶ 23. After the Local Union filed a grievance on Perry's behalf claiming that her discharge was without just cause, on August 29, 2000, the Local Union and the Postal Service entered into a pre-arbitration "Grievance Settlement" which rescinded Perry's discharge and provided that the Postal Service would make Perry whole "for all lost time and benefits, seniority unimpaired." *Id.* at ¶ 24. The Local Union alleges that the Postal Service has refused to issue any back payments to Perry as required by the settlement. *Id.* at ¶ 25.

## III. *DISCUSSION*

At the outset, the Court notes that the Local Union's request for relief with respect to the grievance of Linda Perry is mooted by the Postal Service's presentation of an uncontradicted Declaration and supporting documentation showing that the Postal Service paid back wages to Perry on August 23, 2001. Def.'s Rep., Ex. C. Accordingly, the Court will grant the Postal Service's Motion for Summary Judgment as to Linda Perry.

With respect to the two grievance arbitration awards in favor of Benbow and Shore, the Postal Service argues in its Motion for Summary Judgment that, in the first instance, it is entitled to summary judgment on the ground that the Local Union does not have "standing" to bring suit. Alternatively, the Postal Service argues that it was permitted to decline to pay back wages to Benbow and Shore under Section 436 of the Postal Service's Employee and Labor Relations Manual ("ELM § 436").[3] According to the Postal Service, provisions of the ELM are incorporated into the CBA under Article 19 of the CBA. Declaration of Peter Sgro, Def.'s Mot., Ex. C at ¶ 4. The relevant portion of ELM § 436 states that "[b]ack pay is allowed, unless otherwise specified in the appropriate award or decision, provided the employee has made reasonable efforts to obtain other employment, except that the employee is not required to make such efforts during the first 45 days of the back pay period." ELM § 436.2(b). It is the Postal Service's position that ELM § 436 allows the Postal Service to determine whether an employee awarded back pay by an arbitrator has made reasonable efforts to obtain other employment *after* the award. Further, the Postal Service argues that, upon its unilateral determination that an employee did not make the required reasonable efforts before an arbitration award of back pay, ELM § 436 permits the Postal Service to decline to pay the awarded back wages. Finally, the Postal Service argues that its position as to the meaning of ELM § 436 has been

---

**3.** ELM § 436 is set forth at Def.'s Mot., Ex. C–2.

incorporated into the CBA as a result of the National Union's waiver of arbitration on that issue.[4]

The Local Union argues in response that it has "standing" to sue. Additionally, the Local Union argues that ELM § 436 and the National Union's purported waiver of arbitration on the disputed meaning of ELM § 436 are irrelevant to the Court's disposition of this case. It is the position of the Local Union that the Court must defer to the parties' choice to proceed in arbitration and, in turn, defer to the arbitrator's interpretation of the CBA which resulted in awards of back pay.

The Court will first address the Postal Service's argument that the Local Union does not have "standing" to sue, an argument the Court rejects. The Court will then address the propriety of the Postal Service's refusal to pay back wages to Benbow and Shore in accordance with the arbitration awards. For the reasons stated in that discussion, the Court concludes that the Postal Service's actions were improper; accordingly, the Court will grant the Local Union the relief it seeks with respect to Benbow and Shore—enforcement of the arbitration awards.

### A. STANDING

The Postal Service argues that, because the Local Union is not a signatory to the CBA, as is the National Union, the Local Union has no "standing" to sue. As support for this argument, the Postal Service cites *Pittsburgh Metro Area Postal Workers Union, AFL–CIO v. U.S. Postal Serv.,* 463 F.Supp. 54 (W.D.Pa.1978), *aff'd,* 609 F.2d 503 (3d Cir.1979) (table), *cert. denied,* 445 U.S. 950, 100 S.Ct. 1598, 63 L.Ed.2d 785 (1980) (*"Pittsburgh Metro I"*). In that case, brought by a local union to enforce a settlement of a grievance, the court reviewed the CBA and found "[n]o provision is made that the locals, such as Metro, are

free to sue on matters concerning the national contract." *Id.* at 56. In addition to finding no provision in the CBA explicitly allowing the local to sue, the court noted that the underlying grievance action "was brought under the grievance procedures in the national agreement to enforce the Postal Service's contractual obligations under the national agreement." *Id.* Because "[t]hose same grievance provisions do not allow a local even to arbitrate an issue without written authorization to the employer at the national level from the national president," the court concluded that the local could not bring the federal court action. *Id.* at 56–57 (citing CBA Article 15 § 3); *see also Local Union No. 307, Nat'l Postal Mailhandlers Union v. U.S. Postal Serv.,* 1997 WL 397718, at *2 (E.D.Mich. June 18, 1997) (citing *Pittsburgh Metro I,* 463 F.Supp. at 57) (acknowledging case law requiring National Union's written permission for Local Union to bring suit, but rejecting Postal Service's standing argument on ground that Local Union had received such written permission).

The Court notes that the Third Circuit's unpublished, non-precedential, affirmance of the district court's ruling in *Pittsburgh Metro I* is not binding on this Court. *See* Third Circuit Internal Operating Procedures ch. 5.3 (providing that opinions are designated "not precedential" when the opinion "ha[s] value only to the trial court or the parties"). That is significant in light of the fact that, since *Pittsburgh Metro I* was decided nearly twenty-four years ago, much of the reasoning underlying its ruling that a local union could not bring a federal enforcement action without authorization from the national union has been undercut.

As one Court of Appeals, the Eleventh Circuit, has pointed out, the Postal Service's use of *Pittsburgh Metro I* to support a "standing" argument is not on point be-

---

**4.** The Court discusses the background of this argument *infra* § III.B.2.a.

cause the argument "has little, if anything, to do with the doctrine of 'Standing' as it has developed under Article III of the Constitution." *American Postal Workers Union, AFL–CIO v. U.S. Postal Serv.*, 823 F.2d 466, 477 (11th Cir.1987) ("*APWU*"). In *APWU*, the court held that the Local Union has standing in the Article III sense, because it "represented the [National] Union's interests" in the arbitration proceedings and it "stands to gain or lose the most from this court's decision" so as to give it a "sufficient 'stake in the outcome.'" *Id.* The Ninth Circuit agreed with the Eleventh Circuit's analysis of the "standing" issue: "Even if the Local Union is not a party to the collective bargaining agreement, it did represent the Local's interests in the arbitration and stands to lose or gain from our decision, thus it has a sufficient stake in the outcome to have article III standing." *American Postal Workers Union of L.A., AFL–CIO v. U.S. Postal Serv.*, 861 F.2d 211, 213 (9th Cir. 1988) ("*APWU L.A.*")

■ An analysis of the submissions of the parties leads the Court to conclude that the Postal Service is not actually making a "standing argument," but is, instead, arguing "that the local is not contractually authorized ... to bring suit. This is quite a different matter, arguably more akin to 'capacity' to sue rather than standing." *APWU*, 823 F.2d at 477. Significantly, the Ninth Circuit in *APWU L.A.* identified a number of "persuasive arguments" supporting a conclusion that a local union does indeed have "authority to seek judicial review of an arbitral award." *APWU L.A.*, 861 F.2d at 216.

First, the *APWU L.A.* court had before it language in the CBA similar to the language of the CBA considered by the *Pittsburgh Metro I* court. The CBA provision discussed in *Pittsburgh Metro I* stated, in the court's words, that a local could not "arbitrate an issue without written authorization to the employer at the national level from the national president." *Pittsburgh Metro I*, 463 F.Supp. at 56–57 (citing CBA Article 15 § 3). A matching provision cited by the Postal Service in *APWU L.A.* stated that "[n]o grievance may be arbitrated at the National level except when timely notice of appeal is given the Employer in writing by the National President of the Union involved." *APWU L.A.*, 861 F.2d at 214 (citing CBA Article 15.4A(2)).[5] On appeal, the Ninth Circuit rejected the District Court's reading of this passage—similar to that adopted by the *Pittsburgh Metro I* court— that " 'in order for a local union to have standing to arbitrate, it would have to have written authorization from the national president of the union.'" *Id.* Instead, the Ninth Circuit concluded that the language was relevant only to arbitration at the *national* level. *Id.* The relevant provision of the CBA said nothing about arbitration at the *regional* level—like the arbitrations at issue in this case—and, moreover, it said nothing about written notice to the Local Union. *Id.*

Thus, under the Ninth Circuit's analysis in *APWU L.A.*, it is clear that the CBA language cited in the *Pittsburgh Metro I* case does not require, as the Postal Service argues in this case, the Local Union to obtain written authorization from the National Union in order to pursue an enforcement action. The Postal Service cites no language in the CBA to support its argu-

---

5. The CBA has gone through a number of iterations as a result of periodic negotiations between the National Union and the Postal Service. As a result, it is not clear from the record whether the provision cited in *Pitts-* *burgh Metro I* had the same language as that at issue in *APWU L.A.*, or, for that matter, whether the similar provisions addressed in both of those cases remain in the version of the CBA at issue in this case.

ment. According to the Local Union, there is no such language. *See* Pl.'s Mem. of Law at 17 n.16 (stating that "[i]n the case of local grievances, the National Agreement requires only that the referring party be authorized by the President to submit grievances to arbitration generally" and that "[t]here is no case-by-case authorization to submit grievances to arbitration"). With no contradictory evidence from the Postal Service, the Court concludes that there is no provision in the CBA preventing the Local Union from bringing actions in federal court to enforce local arbitration awards without authorization from the National Union.

In addition to finding no prohibition in the CBA, the Ninth Circuit found persuasive reasons for concluding that the Local Union should be permitted to bring an enforcement action. Specifically, the court found persuasive the argument that a local union has "implied authority" to pursue a federal action with respect to the arbitration because, although it was "clear that the parties to the collective bargaining agreement are the USPS and the National Union . . . .it is also clear that the Local Union was a party to the arbitration procedure," *APWU L.A.*, 861 F.2d at 214–15, and, moreover, the "duty of fair representation necessarily creates authority to seek judicial review of arbitration awards." *Id.* at 216 (citing *NLRB v. Int'l Longshoremen's & Warehousemen's Union*, 514 F.2d 481, 483 (9th Cir.1975)).

Finally, the Ninth Circuit noted that, even without specific authority, the Local Union's argument that it could bring a federal enforcement action was convincing because "the objection" to its authorization "was waived by the failure of USPS to raise the question before the arbitrator." *Id.* at 216; *see also APWU*, 823 F.2d at 477–78 ("It seems to us that [the Postal Service] cannot simultaneously claim the benefits of an arbitration award while as-

serting that the other party to the arbitration lacks standing to challenge it. If [the Postal Service] wanted to raise the issue of lack of authorization, it should have done so before the arbitrator."). Notably, just as in *APWU L.A.* and *APWU*, the Postal Service in this case did not object to the Local Union's authorization at the arbitration level.

Despite the persuasive arguments that a local union can bring suit without authorization, the Court notes that the Ninth Circuit declined to finally decide the issue, concluding, instead, that "justice can be served by the expedient of remanding the case to the district court with instructions to permit the Local Union to amend its complaint . . . and name the National Union as a party." *APWU L.A.*, 861 F.2d at 216. Similarly, the Eleventh Circuit did not finally decide whether a local union may bring suit because, in the case before it, the local union had alleged in its Complaint that it had authority to proceed—an allegation that the Eleventh Circuit deemed sufficient to withstand a motion to dismiss. *APWU*, 823 F.2d at 478.

The Court agrees with the reasoning of the Ninth and Eleventh Circuits in *APWU L.A.* and *APWU* which supports a conclusive determination that the Local Union has authority to bring suit to enforce an arbitration award. The Court finds additional support for this conclusion in the Eleventh Circuit's analogy of the "standing" issue to a "capacity" issue, an analogy the Eleventh Circuit noted, but did not fully discuss.

"Capacity to sue is a defense, and the federal rules require not only that the defendant raise issues of capacity, but he must do so by 'specific negative averment.'" *F.D.I.C. v. Calhoun*, 34 F.3d 1291, 1299 (5th Cir.1994) (quoting Fed. R.Civ.P. 9(a)). The only argument the Postal Service has made with respect to the Local Union's "capacity" is to urge the

Court to rely on the *Pittsburgh Metro I* court's analysis. To the extent this argument is the equivalent of the required "specific negative averment" required under Fed.R.Civ.P. 9(a), it creates an issue of fact. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1294 (2d ed.1990). ("An effective denial of capacity ... creates an issue of fact.").

As the Court has already discussed, the reasoning of the *Pittsburgh Metro I* court has been undermined by more recent cases. The Postal Service's citation to that case thus does not provide support for its argument that the Local Union lacks capacity to sue. Because the Postal Service provides no evidence that would call into question the Local Union's authority to sue—including, most glaringly, any contractual language—the Court rejects the Postal Service's "standing" argument and concludes that the Local Union has authority to enforce the arbitration awards in this case.

## B. ENFORCEMENT OF THE ARBITRATION AWARDS

■ "The Supreme Court has held that 'judicial review of a labor-arbitration pursuant to a collective bargaining agreement is very limited.'" *Nat'l Ass'n of Letter Carriers, AFL–CIO v. U.S. Postal Serv.*, 272 F.3d 182, 185 (3d Cir.2001) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001) (per curiam)). In short, the standard of review the Court must adopt in this case provides that, "if the arbitration award draws its essence from the collective bargaining agreement, a court should uphold it." *Id.* (citing *United Parcel Serv. v. Int'l Bhd. of Teamsters*, 55 F.3d 138, 141 (3d Cir.1995)).

■ The Local Union argues that, in this case, the arbitration awards for which it seeks enforcement clearly draw their essence from the CBA. The CBA requires that union employees may only be terminated for just cause, and it permits the Local Union to pursue a grievance for alleged improper termination. If the grievance is rejected, the Local Union may proceed to arbitration, and the arbitrator determines whether there was just cause for a discharge. If the arbitrator determines there was no just cause, the arbitrator fashions a remedy. That is, the Local Union argues, exactly what the arbitrator did in the Benbow and Shore cases. The Court agrees with the Local Union's argument. The arbitration decisions in favor of Benbow and Shore do indeed "draw their essence" from the CBA.

■ The Postal Service does not, however, challenge the enforcement of the arbitration awards on this point. Rather, the Postal Service argues that it may permissibly refuse to pay arbitrator-ordered back wages under ELM § 436. That provision, the Postal Service argues, allows it to make a unilateral determination, independent of the arbitration, that an employee awarded back pay failed to make reasonable efforts to seek other employment during the back pay period. Upon such a determination, the argument continues, the Postal Service may reduce back pay accordingly. According to the Postal Service, this practice is supported by a history of dealing between the National Union and the Postal Service and by a number of arbitration decisions.

In response, the Local Union cites three District Court opinions, all of which rejected the exact arguments the Postal Service makes in this case. *See American Postal Workers Union v. U.S. Postal Serv.*, No. 00–CV–817, slip op. (S.D.Cal. Aug. 8, 2000) ("*APWU McManis*") [6]; *Pittsburgh Metro*

6. The slip opinion is appended to the Local Union's Cross Motion at Exhibit G.

*Area Postal Workers' Union v. U.S. Postal Serv.*, No. 95–1706, 1997 U.S. Dist. LEXIS 12582 (W.D.Pa. May 12, 1997) ("*Pittsburgh Metro II*"); *American Postal Workers Union, Brooklyn Local v. U.S. Postal Serv.*, No. 88–C–1974, 1989 WL 35953, 1989 U.S. Dist. LEXIS 3819 (E.D.N.Y. March 29, 1989) ("*APWU Brooklyn*").

The Postal Service responds to the Local Union's citation of these cases by arguing that this case presents different circumstances. Specifically, the Postal Service argues that, during the relevant time period, the National Union had waived arbitration on a dispute as to the meaning of ELM § 436. As a result of this purported waiver, the Postal Service contends that its interpretation of the provision—allowing it to unilaterally diminish back pay awards after arbitration—has been incorporated into the CBA, thus distinguishing this case from those cited by the Local Union.

The Court will address these arguments by, first, discussing the precedent cited by the parties. The Court will then turn to the Postal Service's argument related to waiver of arbitration on the ELM § 436 issue.

### 1. Precedent on ELM § 436

█ At the outset, the Court notes that the arbitration decisions cited by the Postal Service in support of its argument as to the meaning of ELM § 436, *see e.g.*, Def.'s Exs. C–3, D, E, do not represent a binding interpretation of the CBA. All of the cited decisions arise from regional—as opposed to national—arbitrations, and "[b]y contract, the parties have agreed that Regional arbitration decisions do not have precedential effect." Def.'s Mem. of Law at 14 n.3. The Postal Service's purpose in citing the arbitration decisions is to "illustrate

both the historical and long standing practices by arbitrators, the Postal Service and the APWU of applying and following the requirements of ELM 436 after an arbitration decision awarding back pay." *Id.*

The Court finds it significant that all three of the District Court opinions cited by the Local Union uniformly rejected the history and course of dealing argument advanced by the Postal Service in this case. The Court agrees with these decisions—*APWU McManis, Pittsburgh Metro II,* and *APWU Brooklyn*—and concludes that they amply support the Local Union's position in this case that the Postal Service may not, under ELM § 436, decline to pay arbitrator-ordered back pay.

APWU McManis contains the most thorough analysis of the three cases the Local Union cites. The facts of that case mirror the facts in this case: just as with the Benbow and Shore arbitrations at issue in this case, the Union in APWU McManis pursued arbitration on behalf of a Postal Service employee, McManis, whom, the Union argued, had been terminated without just cause. *APWU McManis*, slip op. at 2. After the arbitrator sustained the grievance and awarded back pay, the Postal Service refused to pay any back wages because of its determination that McManis had failed to mitigate her losses in accordance with ELM § 436. *Id.*

In the federal court action to enforce the arbitration award, the court found unpersuasive the Postal Service's argument "that it is the parties' 'practice . . . to have the Union and employee submit evidence on the issue of back pay, including mitigation of damages, after an arbitrator issues an award for back pay.'" *Id.* at 4 (quoting Declaration of Peter Sgro at ¶ 17).[7] The court concluded that "[t]he applicable law

---

**7.** The Court notes that, in this case, the Postal Services places similarly heavy reliance on the Declaration of Peter Sgro, a Manager of

Contract Administration for the Postal Service, in its argument as to the prior practice with respect to ELM § 436.

does not support [the Postal Service's] position." *Id.* at 5. Specifically, the court stated that, "[b]ecause neither party raised the issue of mitigation of damages, the arbitrator could have properly considered it a non-issue and presumed the precondition in § 436 of the manual, that the 'employee has made reasonable efforts to obtain other employment,' was met." *Id.* at 6 (quoting ELM § 436). Moreover, the Postal Service's failure to raise the issue of mitigation in the underlying arbitration constituted "a waiver of the issue" thus precluding the Postal Service from raising it "in an enforcement proceeding." *Id.* at 7 (citing, *inter alia, Teamsters, Chauffeurs, Salesdrivers & Helpers, Local Union No. 330 v. Elgin Eby–Brown Co.,* 670 F.Supp. 1393, 1397–98 (N.D.Ill.1987)).

Even if it was the Postal Service's practice to apply ELM § 436 after an arbitration award of back pay, the court stated, such a practice "does not justify [the Postal Service's] attempt to impede a court's enforcement of an arbitration award." *Id.* at 9. The court arrived at this conclusion in light of a long-held principle as to the raising of defenses:

> ... [T]he policy of the law, both in litigation and arbitration, is to resolve the entire matter involving one claim and defenses thereto in one proceeding, with later appellate review of the entire case. Acceptance of Defendant's argument would provide a party the option of piece-meal proceedings, asserting a new "fall-back" position only after rejection of its initial arguments. To allow this would undercut the finality and therefore the entire usefulness of arbitration as an expeditious and generally fair method of settling disputes.

*Id.* (quoting *Washington–Baltimore Newspaper Guild, Local 35 v. Washington Post Co.,* 367 F.Supp. 917, 919 (D.D.C.1973)) (further citations omitted). For these reasons, the court held that, because the Postal Service "failed to raise the issue of mitigation as a defense before the arbitrator, it cannot now resist enforcement of the award here on the grounds that the grievant failed to mitigate her losses by seeking alternative employment during her termination period." *Id.; see also APWU Brooklyn,* 1989 WL 35953, at *5, 1989 U.S. Dist LEXIS 3819, at *12 (concluding that requiring Union to comply with ELM § 436 after arbitration award "would conflict with Article 15 of the National Agreement which provides that the arbitrator's decision is final and binding").

In this case, the Postal Service failed to raise a mitigation defense during the Benbow and Shore arbitrations. *See* Complaint at ¶ 1. Like the court in *APWU McManis,* this Court rules that the Postal Service may not raise such a defense now.

### 2. The National Union's Purported Waiver of Arbitration on the Meaning of ELM § 436

The Postal Service raises only one argument as to why the Court should depart from the federal court decisions rejecting the Postal Service's ELM § 436 argument—that each of the cases cited by the Local Union is distinguishable from this case because the cited cases were decided before the National Union waived arbitration challenging the Postal Service's interpretation of ELM § 436. Before addressing the Postal Service's argument that this case is distinguishable from those cited by the Local Union, the Court sets forth the factual background of the Postal Service's position that the National Union waived arbitration on the ELM § 436 issue.

### a. National interpretive dispute concerning ELM § 436

The Postal Service's argument that the National Union waived arbitration on ELM § 436 arises out of proceedings,

commencing in September 2000 and ending at some time in 2001 under Article 15 of the CBA ("Article 15 proceedings"). The specific provision of the CBA under which these proceedings took place is Article 15.4.D, which provides:

It is agreed that in the event of a dispute between the Union and the Employer as to the interpretation of this Agreement, such dispute may be initiated at the Step 4 level[8] by either party. Such a dispute shall be initiated in writing and must specify in detail the facts giving rise to the dispute, the precise interpretive issues to be decided and the contention of either party. Thereafter the parties shall meet in Step 4 within thirty (30) days in an effort to define the precise issues involved, develop all necessary facts, and reach agreement. Should they fail to agree, then, within fifteen (15) days of such meeting, each party shall provide the other with a statement in writing of its understanding of the issues involved, and the facts giving rise to such issues. In the event the parties have failed to reach agreement within sixty (60) days of the initiation of the dispute in Step 4, the Union then may appeal it to arbitration, within thirty (30) days thereafter. Any local grievances filed on the specific interpretive issue shall be held in abeyance at the appropriate level pending resolution of the national interpretive dispute.

Article 15.4.D.[9]

In September 2000, the Postal Service and the National Union entered into proceedings under Article 15.4.D with respect to the interpretation of ELM § 436. In correspondence dated September 5, 2000, the Postal Service informed the National Union that it was initiating a dispute as to "[w]hether application of [ELM § 436] entitled, 'Back Pay,' Subsection 436.12 is applicable after receipt of an arbitrator's decision awarding full back pay." Def.'s Mot., Ex. B–2. According to the Postal Service, the facts underlying this dispute were:

The American Postal Workers Union at the local level asserts that the Postal Service violated the National Agreement when the Postal Service limited the amount of a back-pay award for failure to make a reasonable effort to obtain other employment. Additionally, that [sic] Article 15 provides that an arbitrator's decision is final and binding and precludes application of the ELM, Section 436.

Id. In the September 5, 2000, correspondence, the Postal Service stated that its position with respect to the interpretive dispute was that, "following an arbitrator's award, Section 436 provides that the employee is responsible to submit information in order to establish the appropriate amount of back pay." Id.

After initiation of the dispute, representatives of the National Union and the Postal Service met as provided in Article 15.4.D. Def.'s Mot. Ex. B–3. After that meeting, the Postal Service provided "its understanding of the issue involved" in correspondence dated April 19, 2001. Id. The National Union's position, in the Postal Service's words, was "that an arbitration decision awarding back pay is final and binding and the Postal Service violates Article 15 of the National Agreement by applying ELM 436 subsequent to the arbitrator's decision." Id. Additionally, the

---

**8.** "Step 4" is the final step of the grievance procedures set forth in Article 15.2 of the CBA, which provides for the initiation of disputes "by the appropriate · National Union/Management representative."

**9.** Many of the provisions in the CBA contain text that is partially bolded to identify agreed-upon revisions. The Court's citations to Article 15.4.D do not replicate the bolded text.

Postal Service stated that it understood the National Union to believe "that the Postal Service must raise the issue of mitigation of damages during the arbitration proceedings or waive its right to do so." *Id.*

In contrast to the National Union's view, the Postal Service took the position, after the parties' meeting, that ELM § 436 "contemplates a post-award review of the facts to determine an appropriate amount of back pay." *Id.* Additionally, the Postal Service denied "that the application of ELM 436 creates a conflict with arbitrator's [*sic*] awards or Article 15 of the National Agreement" and, instead, contended that "there is no contract provision requiring mitigation evidence to be presented at the arbitration hearing determining the propriety of a suspension or removal." *Id.* Finally, the Postal Service stated that "the parties have a long-standing practice of applying ELM 436 subsequent to the issuance of an arbitration award deciding the merits of suspension or removal." *Id.*

Under the interpretive dispute procedures in Article 15.4.D, the National Union "had to appeal this issue to arbitration within sixty (60) days," but it did not do so. Declaration of Doug Tulino, Def.'s Mot. Ex. B at ¶ 8. The Postal Service argues that the National Union's failure to proceed to arbitration constituted a waiver and "withdrawal of its position" on the interpretive dispute with respect to application of ELM § 436. *Id.* at ¶¶ 9–10.[10] In light of this withdrawal, the Postal Service argues further that its position on ELM § 436 has been incorporated into the CBA and is therefore binding on both the Local Union and this Court.

For these reasons, the Postal Service takes the position that, after the arbitra-

tion awards in the Benbow and Shore proceedings, it was permitted to determine whether Benbow and Shore had made "reasonable efforts to obtain other employment" under ELM § 436.2(b). Upon its finding that neither Benbow nor Shore had made such reasonable efforts, the Postal Service contends that it was entitled to decline to pay back wages to Benbow and Shore.

The Court expresses no opinion on the Postal Service's argument that the Article 15 proceedings and the National Union's withdrawal of its position resulted in incorporation of the Postal Service's position on ELM § 436 into the CBA. For, as discussed in the next section of this Memorandum, even if the Court were to agree with the Postal Service's argument, it is inapplicable in this case.

### b. Analysis

■ Assuming, *arguendo*, that the Postal Service's argument as to incorporation of its position on ELM § 436 into the CBA is correct, the Court rejects the Postal Service's argument that the Article 15 proceedings justify distinguishing this case from those cited by the Local Union. The Court reaches this conclusion because, in its analysis, the Postal Service fails to recognize that, as the Local Union argues, the Article 15 proceedings were not completed until *after* the arbitration awards in this case.

The Benbow and Shore arbitration awards were issued in June 2000. The Postal Service did not commence the Article 15 proceedings until September 5, 2000, nearly two months later. Although the Postal Service issued its letters to Benbow and Shore notifying them that the Postal

---

10. In further support of this argument, the Postal Service cites Article 15.4B of the CBA, which provides that "[t]he failure ... of the Union ... to meet the prescribed time limits of the Steps of this procedure, including arbitration, shall be considered as a waiver of the grievance."

Service was denying them back pay under ELM § 436 after the initiation of the Article 15 proceedings, on September 28, 2000, the Article 15 proceedings were not completed until some time after April 19, 2001.[11]

Accordingly, the Postal Service's position on the meaning of ELM § 436 would not have been incorporated into the CBA until after April 19, 2001. Prior to that time, the meaning of ELM § 436 was in dispute. This fact is confirmed by the Postal Service's initiation of Article 15 proceedings for the purpose of working with the National Union to "define the precise issues involved, develop all necessary facts and reach agreement." Def.'s Mot. at Ex. B–2. The Postal Service's desire to "reach agreement" through Article 15 proceedings can only mean that, before September 5, 2000, the parties did not agree on the meaning of ELM § 436.

Thus, to resolve this case, the Court must decide which of the divergent views with respect to the meaning of ELM § 436 that prevailed before the Article 15 proceedings—that of the Postal Service, or that of the Local Union—is correct under federal law. As stated previously, every federal court decision cited by the parties supports the Local Union's position. The Court agrees with these decisions. In addition to concluding that the Postal Services's failure to raise a mitigation defenses at arbitration serves as a waiver of that defense, the cited cases adopt the most plain reading of ELM § 436. As stated by courts addressing ELM § 436 before the Article 15 proceedings, "there is nothing in Section 436 or in the National Agreement that demonstrates a specific time frame for the engagement of" ELM § 436. *Pittsburgh Metro II*, 1997 U.S. Dist. LEXIS 12582, at *29. Before the Article 15 pro-

ceedings, the Postal Service could provide no argument as to why a plain reading of ELM § 436 should be ignored; it had "not presented any evidence or cited any authority which demonstrates that the Section 436 procedure [was] to be implemented after the arbitrator issued an award." *Id.* at *31.

In this case, of course, the Postal Service argues that the Article 15 proceedings changed the circumstances and provide the reasoning, missing in earlier cases, to support its position. The Local Union responds that the Article 15 proceedings can not be applied retroactively to the Benbow and Shore arbitrations. The Court agrees with the position of the Local Union. Significantly, even though the Postal Service had ample opportunity to reply to the Local Union's argument against the retroactive application of the Article 15 proceedings, it has not done so. This omission is a telling one, and it lends additional support to the Court's conclusion. Accordingly, because there is no reason to retroactively apply the Article 15 proceedings, the Court rejects the Postal Service's argument that the result of those proceedings is binding in this case.

This Court, like every other federal court to address the issue, concludes that the Postal Service acted improperly when it declined to pay back wages to Benbow and Shore based on its unilateral determination that Benbow and Shore failed to mitigate their damages. The Court will therefore enforce the Benbow and Shore arbitration awards.

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part the Postal Service's Motion for Summary

---

**11.** The Postal Service does not supply a date by which the National Union waived arbitra-

tion on the ELM § 436 interpretive dispute.

Judgment and grant in part and deny in part the Local Union's Cross Motion for Summary Judgment.

An appropriate order follows.